(730 P.2d 1099)
No. 59,367

RICHARD C. KLAMM, *Appellee,* v. LARRIS DANIEL CARTER, *Defendant,* and MID-CENTURY INSURANCE COMPANY, *Appellant.*

Opinion filed December 24, 1986.

*Robert Rowe* and *Clifford T. Mueller,* of McAnany, Van Cleave & Phillips, P.A., of Lenexa, for appellant.

*J. Roy Holliday, Jr.,* of Speer, Austin, Holliday & Ruddick, of Olathe, for appellee.

Before PARKS, P.J., BRISCOE and BRAZIL, JJ.

BRAZIL, J.: Mid-Century Insurance Company appeals the trial court's judgment which held that an exclusion in the uninsured motorist (UM) coverage of its policy did not apply to the policy owner, Richard Klamm.

The parties stipulated to the facts and submitted only questions of law for the trial court's decision. Their stipulations and the record together disclose the following pertinent facts.

Richard Klamm bought an automobile insurance policy from Mid-Century which covered his 1980 Oldsmobile Toronado. The policy included uninsured motorist coverage. On July 15, 1983, Klamm bought a motorcycle. Though he had purchased no insurance for the motorcycle, Klamm was riding it on a public

street the next day when Larris Carter negligently drove his truck into Klamm. Only Carter's negligence caused the accident but he had no liability insurance. Klamm suffered damages within the limits of the uninsured motorist coverage of his Mid-Century policy.

Mid-Century first argues that the trial court incorrectly concluded the term "a person" used in the uninsured motorist coverage exclusion was ambiguous and that it should be construed not to apply to Klamm.

Certain often-stated principles apply when construing insurance policies.

"The test to be applied in determining the intention of the parties to an insurance policy is not what the insurer intended the policy to mean, but what a reasonable person in the position of the insured would understand it to mean. Since an insurer prepares its own contracts, it has a duty to make the meaning clear, and if it fails to do so, the insurer and not the insured must suffer. Thus, if the terms of an insurance policy are ambiguous or susceptible of more than one meaning, the meaning most favorable to the insured must prevail. [Citations omitted.]" *Fancher v. Carson-Campbell, Inc.*, 216 Kan. 141, 145-46, 530 P.2d 1225 (1975).

See also *Clayton v. Alliance Mutual Casualty Co.*, 212 Kan. 640, 646, 512 P.2d 507 (1973) (same rules apply to uninsured motorist insurance). However, the rule that ambiguous language should be construed in favor of the insured "does not authorize a perversion of the language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists. [Citation omitted.]" *Girrens v. Farm Bureau Mut. Ins. Co.*, 238 Kan. 670, 675, 715 P.2d 389 (1986). Furthermore, "[r]egardless of the construction of a written instrument made by the trial court, on appeal the instrument may be construed and its legal effect determined by the appellate court. [Citation omitted.]" *Hall v. Mullen*, 234 Kan. 1031, 1035, 678 P.2d 169 (1984).

The pertinent language of the policy reads as follows:

"PART II - UNINSURED MOTORIST

. . . .

"We will pay **damages** for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle**. The **bodily injury** must be caused by **accident** and arise out of the ownership, maintenance or use of the **uninsured motor vehicle** or an **underinsured motor vehicle**.

. . . .

"Additional Definitions Used In This Part Only

"As used in this Part:

"1. **Insured person** means:
   a. You or a **family member**.
   b. Any other person while **occupying your insured car**.
   c. Any person for **damages** that person is entitled to recover because of **bodily injury** to you, a **family member**, or another occupant of **your insured car**.

But, no person shall be considered an **insured person** if the person uses a vehicle without having sufficient reason to believe that the use is with permission of the owner.

"2. **Motor vehicle** means a land motor vehicle or a trailer but does not mean a vehicle:
   a. Operated on rails or crawler-treads.
   b. Which is a farm type tractor or any equipment designed or modified for use principally off public roads while not on public roads.
   c. Located for use as a residence or premises.

. . . .

"Exclusions

. . . .

"This coverage does not apply to **bodily injury** sustained by a person:

"1. While **occupying** a **motor vehicle** owned by . . . you . . . for which insurance is not afforded under this policy."

Mid-Century simply argues "a person" as used in the exclusion is clear and means anyone, including Klamm, occupying a vehicle Klamm owned but had not insured under Mid-Century's policy.

Klamm raises several arguments to oppose Mid-Century's claim the exclusion applies to him. He first notes that UM coverage is provided to three groups who are: 1) the named insured or a family member; 2) other persons while occupying the insured car; and 3) persons entitled to recover damages because of bodily injury to persons in either of the first two groups. Pointing to exclusions under the liability and personal injury protection portions of the policy which clearly do exclude the named insured, he argues Mid-Century knew how to exclude the named insured when that was its intent but failed to do so in this case. He adds that a reasonable person in his position would understand the exclusion did not apply to the named insured. Alternatively, he argues that a reasonable person would at least be confused by the exclusion and *could* believe it did not apply to the named insured. The rules of construction applied to insurance contracts, then, would require the policy to be construed to provide coverage in this situation.

We disagree. Klamm's suggestion that the exclusion could reasonably be interpreted to refer only to the second and third

groups is difficult to accept. The second group is certainly not granted coverage in the first place when occupying a motor vehicle not insured under the policy, so the exclusion would add nothing to the policy if it applied only to them. Likewise, we believe the third group's coverage is also tied to the insured car and, therefore, the exclusion is not necessary to limit their coverage. A more reasonable approach is to assume the exclusion is in the policy for a purpose. That purpose is to exclude the named insured.

Klamm also advances an argument on appeal which the trial court rejected. He claims "a reasonable reading of the policy would cause one to conclude that there was a thirty (30) day grace period of coverage extended for a newly acquired vehicle to allow the insured to advise the carrier of its acquisition." We disagree. Under the policy, "[y]**our insured car** means . . . 2. Any additional **private passenger car** or **utility car** of which you acquire ownership during the policy period provided that: a. You notify us within 30 days of its acquisition . . . ." "**Private passenger car**" is defined as "a *four wheel* land motor vehicle." "**Utility car**" is defined as "a land motor vehicle having *at least four wheels*." (Emphasis added.) Thus, a *reasonable* reading discloses that a motorcycle cannot be an "insured car" under the policy even if Mid-Century is notified of its acquisition within thirty days.

Having determined that the exclusion applies to Klamm, we must next consider if it exceeds the scope of the exclusion authorized by K.S.A. 40-284(e)(1).

At the time Klamm had his accident, K.S.A. 40-284 read in pertinent part:

"(a) No *automobile* liability insurance policy covering liability arising out of the ownership, maintenance, or use of any *motor vehicle* shall be delivered . . . with respect to any *motor vehicle* registered . . . in this state, unless the policy contains . . . a provision . . . for payment of part or all sums which the insured . . . shall be legally entitled to recover as damages from the uninsured owner or operator of a motor vehicle because of bodily injury . . . sustained by the insured, caused by accident and arising out of ownership, maintenance or use of such motor vehicle . . . .

. . . .

"(e) Any insurer may provide for the exclusion . . . of coverage when:

"(1) The insured is occupying an uninsured *automobile* owned or provided for the insured's regular use." (Emphasis added.)

Klamm argues: (1) Numerous cases hold that any provisions

attempting to condition, limit, or dilute the unqualified UM coverage mandated by the statute are void, *e.g., Barnett v. Crosby*, 5 Kan. App. 2d 98, 99, 612 P.2d 1250, *rev. denied* 228 Kan. 806 (1980); (2) the claim that Klamm falls within the exclusion is an affirmative defense which Mid-Century has the burden to prove, *Van Brunt, Executrix v. Jackson*, 212 Kan. 621, 624, 512 P.2d 517 (1973); and (3) the 1981 amendments to K.S.A. 40-284 allows an exclusion for automobiles but not motorcycles.

As to his first argument, the cases he cites are all prior to the amendment of K.S.A. 40-284 in 1981, which clearly authorizes five numbered exclusions in subsection (e).

The second point is actually irrelevant where construction of a statute is involved, but it more properly may be said the exclusion should be strictly construed against the insurer because the statute is remedial legislation and insurance policies are construed against the insurer. See *Patrons Mutual Ins. Ass'n v. Norwood*, 231 Kan. 709, 714, 647 P.2d 1335 (1982).

Klamm's third argument would have us reach the conclusion the legislature intended a rather anomalous result. Since K.S.A. 40-284(a) refers to "automobile liability insurance policy" and (e)(1) to "automobile," the word "automobile" should probably be taken to refer to the same thing in both cases. By deciding it refers only to a four-wheel vehicle, the usual reference for "automobile," we would reach this result: *Motorcycle* liability insurance policies need not include UM coverage, yet automobile liability policies, which may exclude coverage for an insured occupying an uninsured automobile, may not exclude UM coverage for an insured while occupying an uninsured motorcycle.

A more reasonable result can be reached, however, if "automobile" is construed in both places to refer to motor vehicles generally, including motorcycles. Then motorcycle as well as automobile policies must include UM coverage and insureds occupying uninsured motorcycles as well as automobiles may be excluded from UM coverage.

A similar apparent misuse of the phrase "automobile liability insurance policy" appears in the Kansas Automobile Injury Reparations Act (KAIRA), K.S.A. 40-3101 *et seq.*, which was intended to provide for prompt compensation for injuries caused by motor vehicles. K.S.A. 40-3102. K.S.A. 1985 Supp. 40-3104(a)

provides in pertinent part: "Every owner shall provide *motor vehicle liability insurance* coverage in accordance with the provisions of this act for every motor vehicle owned by such person, unless such motor vehicle is included under an approved self-insurance plan." (Emphasis added.) Subsection (h) of the same statute provides certain penalties for failure to have insurance on a vehicle involved in an accident, but subsection (i) provides in part:

"The suspension requirements in subsection (h) shall not apply:

"(1) To the driver or owner if the owner had in effect at the time of the accident an *automobile liability policy* as required by K.S.A. 40-3107, and amendments thereto, with respect to the vehicle involved in the accident;

"(2) to the driver, if not the owner of the vehicle involved in the accident, if there was in effect at the time of the accident an *automobile liability policy* with respect to such driver's driving of vehicles not owned by such driver." (Emphasis added.)

K.S.A. 1985 Supp. 40-3107 states in part: "Every policy of *motor vehicle liability insurance* issued by an insurer to an owner residing in this state shall: [contain certain provisions and coverages]." (Emphasis added.) As these sections show, when mandating certain coverages for insurance on motor vehicles, our legislature at times appears to use "automobile" and "motor vehicle" interchangeably.

This confusion may have resulted from the law which preceded KAIRA. Passed in 1957, this act used the phrase "motor vehicle liability policy" as a term of art to distinguish the same from an "automobile liability policy"; the former applied only to a policy which had been certified as proof of future financial responsibility while the latter merely exempted a driver or owner from furnishing security. Comment, *The New Kansas Motor Vehicle Safety Responsibility Act*, 6 Kan. L. Rev. 358, 366-67 (1958). That act was repealed when the KAIRA was passed. Whatever this distinction meant under the Motor Vehicle Safety Responsibility Act (MVSRA), we find no similar distinction made under the KAIRA. K.S.A. 40-284 was passed in L. 1968, ch. 273, § 1, so the MVSRA was still in effect and the legislature would have wanted to retain the distinction and therefore used "automobile liability insurance policy." Unfortunately, this language survived the demise of the MVSRA, and appears to have insinuated itself into K.S.A. 40-284, which used the word "automobile" in the first exclusion under new subsec-

tion (e). As used in 40-284, then, "automobile" appears to refer not to four-wheeled vehicles only, but to all motor vehicles and was used this way because it was the most convenient substitute once the generic "motor vehicle" had been commandeered for special use under the MVSRA.

We conclude that "automobile" as used in K.S.A. 40-284 includes motorcycles.

The decision of the trial court is reversed.