(751 P.2d 146)

No. 60,781

KANSAS GAS AND ELECTRIC COMPANY, *Plaintiff-Appellee*, v. KANSAS POWER AND LIGHT COMPANY, *Defendant-Appellant*, CENTEL CORPORATION, *Defendant*, and UTILICORP UNITED, INC., *Defendant*.

Petition for review denied May 4, 1988.)

Opinion filed March 10, 1988.

*John K. Rosenberg* and *Jeffrey S. Southard*, of Kansas Power & Light Company, of Topeka, and *Kent E. Whittaker* and *Frank J. Murphy*, of Hillix, Brewer, Hoffhaus, Whittaker & Horner, of Kansas City, Missouri, for the appellant.

*Ralph B. Foster, J. Michael Peters*, and *John P. DeCoursey*, of Kansas Gas & Electric Company, of Wichita, and *F. Philip Kirwan* and *Christopher J. Daus*, of Margolin and Kirwan, of Kansas City, Missouri, for the appellee.

Before BRAZIL, P.J., DAVIS and ELLIOTT, JJ.

DAVIS, J.: The Kansas Power and Light Company (KPL) appeals from an order denying its application to compel arbitration of a dispute among itself, Kansas Gas and Electric Company (KG&E), Centel Corporation (Centel), and Utilicorp United, Inc., (Utilicorp) co-owners of the Jeffrey Energy Center in Pottawatomie County, Kansas. KG&E filed an action for declaratory judgment against KPL, Centel, and Utilicorp, claiming that KPL breached fiduciary duties owed to it under an operating agreement. The district court agreed with KG&E's contention that the operating agreement did not provide for arbitration.

This appeal involves two issues: (1) whether the denial of a

motion to compel arbitration made under K.S.A. 5-402 is appealable as a matter of right; (2) if so, whether the district court's ruling that the operating agreement did not provide for arbitration is correct.

In January 1975, KG&E, KPL, Central Telephone & Utilities Corporation (now Centel), and Missouri Public Service Company (now Utilicorp) entered into an agreement for the construction and ownership of Jeffrey Energy Center (hereinafter referred to as the "ownership agreement"). The parties divided the ownership of the facility as follows: KPL, 64%; KG&E, 20%; Centel and Utilicorp, 8% each. KPL was designated as the operator of the project.

The ownership agreement contains an arbitration clause, which provides in part as follows:

"25. Arbitration

"(a) Any controversy between or among any of the Owners of the Project, including KPL as Operator, arising out of or relating to this Agreement, or any breach hereof or default hereunder, shall be submitted to arbitration upon the request of any such Owner in the manner provided herein."

In September 1978, the parties to the ownership agreement executed an agreement for the operation of Jeffrey Energy Center ("operating agreement"). The operating agreement contains the following provision concerning its relationship to the ownership agreement:

"1. Precedence of Ownership Agreement

"(a) The respective obligations, duties and responsibilities of KPL, KG&E, CTU [Centel] and MPS [Utilicorp] undertaken in or arising out of this Operating Agreement shall in all respects be subject to and controlled by the definitions, terms, conditions and substantive and procedural provisions of the Ownership Agreement, and the term 'this Agreement' as used in the Ownership Agreement shall be deemed to include this Operating Agreement."

The operating agreement authorizes KPL to act as agent for the other owners in the operation and maintenance of Jeffrey Energy Center. Paragraph 5(a) incorporates a coal supply agreement negotiated by KPL:

"The Operator [KPL] has contracted for a supply of coal for the Project on the terms, conditions and provisions set forth in that certain Coal Supply Agreement between American Metal Climax, Inc. ('AMAX') and the Operator dated July 1, 1973, which is incorporated herein and made part hereof by reference. Each of

the other Owners hereby ratifies and confirms such Coal Supply Agreement, as the same may be amended from time to time by the Operator and American Metal Climax, Inc."

KPL and AMAX agreed to amendments to the coal supply agreement in January 1980, February 1982, September 1982, and January 1986. As amended, the agreement includes a "deficient tonnage" provision, which requires KPL to pay AMAX according to a formula if it fails to purchase within a specified period of time all of the coal called for in the agreement. The coal supply agreement and amendments provide for the purchase of coal for four units at Jeffrey Energy Center, even though Unit 4 was postponed indefinitely due to lack of demand. In the third amendment, executed in September 1982, KPL agreed to increase the amount of coal to be taken, in part to supply its facilities in Lawrence and Tecumseh.

Paragraph 5(g) of the operating agreement states that the owners are to be billed for fuel costs "in proportion to their respective percentages." Paragraph 16 provides that the operating agreement may be amended by the written agreement of "the Owner or Owners of not less than 51% of the Project."

On July 23, 1986, KPL, Centel, and Utilicorp amended the operating agreement, effective January 1, 1986, over KG&E's objection. The amendment includes a new subparagraph, 5(i), which allocates responsibility for deficient tonnage charges among the owners based on coal consumption, rather than on percentage of interest in Jeffrey Energy Center.

KG&E claims that KPL breached its fiduciary duties by amending the operating agreement to its advantage and to the disadvantage of KG&E and by failing in the amendments to the coal supply agreement to delineate between the coal to be delivered to KPL's wholly owned Lawrence and Tecumseh stations and the coal to be delivered to the Jeffrey Energy Center. KG&E alleges that, as a result of KPL's administration of the coal supply agreement, it is exposed to the likelihood of having to pay deficient tonnage charges for coal supplied to KPL's wholly owned plants.

## Jurisdiction

KPL appeals pursuant to K.S.A. 5-418(a)(1), which provides that "[a]n appeal may be taken from: (1) An order denying an application to compel arbitration made under K.S.A. 5-402."

The order entered by the district court denying KPL's application to compel arbitration clearly falls under K.S.A. 5-402(a), which provides in part that "if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied."

KG&E contends that the appeal is interlocutory and must be dismissed. It bases this contention on K.S.A. 5-418(b), which states, "The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action." K.S.A. 1987 Supp. 60-2101(a), which defines this court's jurisdiction, makes appeals in civil actions from the district court to this court subject to the provisions of K.S.A. 1987 Supp. 60-2102. K.S.A. 1987 Supp. 60-2102(a) specifies certain orders that are appealable as a matter of right. KG&E argues that this appeal is interlocutory because the order from which KPL appeals is not among the orders listed in K.S.A. 1987 Supp. 60-2102(a). This court may permit an interlocutory appeal if the district judge states in writing that the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." K.S.A. 1987 Supp. 60-2102(b); Rule 4.01 (1987 Kan. Ct. R. Annot. 18). KPL has not complied with these requirements.

KPL argues that K.S.A. 5-418(a)(1) was intended to make an order denying an application to compel arbitration appealable as a matter of right. In support of its argument, KPL relies on *Hodes v. Comprehensive Health Associates*, 9 Kan. App. 2d 36, 670 P.2d 76 (1983). In *Hodes*, the court held that a denial of a motion to stay arbitration is not an appealable order. The court reasoned as follows:

"K.S.A. 5-418(a)(1) and (2) set forth the statutory right to immediate appeal from orders on applications made under K.S.A. 5-402. Appeals may be taken from orders denying applications to compel arbitration and orders granting applications to stay arbitration. K.S.A. 5-418(a)(1) and (2) do not grant the right to appeal from an order denying an application to stay arbitration made under K.S.A. 5-402(b)." 9 Kan. App. 2d at 38.

Although the court in *Hodes* did not face the issue of whether a party appealing from an order denying an application to compel arbitration must meet the requirements for an interlocutory appeal, it clearly assumed that K.S.A. 5-418(a)(1) and (2) grant the right to immediate appeal.

K.S.A. 5-418 was adopted without change from the Uniform Arbitration Act approved by the National Conference of Commissioners on Uniform State Laws in 1955. The drafters of the uniform act considered certain orders sufficiently final to merit appeal. According to the Prefatory Note to the uniform act, "The section on Appeals is intended to remove doubts as to what orders are appealable and to limit appeals prior to judgment to those instances *where the element of finality is present.*" Unif. Arbitration Act, 7 U.L.A. 2 (1985). (Emphasis added.) The chairman of the committee that drafted the uniform act explained the rationale for making certain orders, but not others, appealable:

"Appeals likewise are commonly neglected in arbitration statutes. *Under the new act, the appealable orders are specifically designated and are confined to those final in nature, such as orders denying motions to compel arbitration or granting motions to stay arbitration.* Orders directing, or refusing to stay, arbitration are not appealable but the point at issue can be raised on appeal from an order confirming the award should one be rendered. Appeals are permitted also from the judgment or decree rendered on an award." Pirsig, *The New Uniform Arbitration Act*, 11 Bus. Law, April 1956, at 44, 51. (Emphasis added.)

KG&E's contention that a party appealing an order denying an application to compel arbitration must meet the requirements of K.S.A. 1987 Supp. 60-2102(b) and Rule 4.01 is not convincing. The legislature would have had no reason for listing an order denying an application to compel arbitration in K.S.A. 5-418(a)(1) had it intended to require a party appealing such an order to satisfy the conditions for an interlocutory appeal. Moreover, permitting an appeal from an order denying an application to compel arbitration only at the end of litigation would risk needless waste of resources. In states that have adopted Section 19 of the Uniform Arbitration Act without change courts have held uniformly that an order denying a motion to compel arbitration is appealable as a matter of right. See *Rocz v. Drexel Burnham Lambert, Inc.*, 154 Ariz. 462, 743 P.2d 971 (Ariz. App. 1987); *Danvers v. Wexler Construction Co., Inc.*, 12 Mass. App. 160,

162 n.3, 422 N.E.2d 782 (1981); *County of Hennepin v. Ada-Bec Systems*, 394 N.W.2d 611, 613 (Minn. App. 1986), *rev. denied* December 17, 1986; *Blow v. Shaughnessy*, 68 N.C. App. 1, 12, 313 S.E.2d 868, *rev. denied* 311 N.C. 751 (1984); *Docutel Olivetti v. Dick Brady Systems, Inc.*, 731 P.2d 475, 477-78 (Utah 1986).

We hold that an order denying a motion to compel arbitration made under K.S.A. 5-402 is appealable as a matter of right. K.S.A. 5-418(a)(1) is an addition to the list of appealable orders in K.S.A. 1987 Supp. 60-2102(a). K.S.A. 5-418(b) does not require that a party appealing an order denying a motion to compel arbitration meet the requirements for an interlocutory appeal, but provides that the procedure for appeals as a matter of right in civil actions shall apply.

### Arbitration

The trial court concluded that the operating agreement did not incorporate the arbitration clause of the ownership agreement. The court based this conclusion on the absence of any reference to arbitration or dispute resolution in paragraph 1(a) of the operating agreement.

The construction of a written contract is a question of law. *Peterson v. Midland Nat'l Bank*, 242 Kan. 266, 272, 747 P.2d 159 (1987). "Regardless of the construction of the written contract made by the trial court, on appeal a contract may be construed and its legal effect determined by the appellate court." *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 713, 732 P.2d 741 (1987). Unless the contract is ambiguous, its meaning must be determined solely from its "four corners." *Brown v. Lang*, 234 Kan. 610, 675 P.2d 842 (1984). "A contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in a sense the contract may be understood to reach two or more possible meanings." *Arkansas Louisiana Gas Co. v. State*, 234 Kan. 797, Syl. ¶ 2, 675 P.2d 369 (1984).

We find no ambiguity about arbitration in the two agreements. By providing in paragraph 1(a) of the operating agreement that "[t]he respective obligations, duties and responsibilities" of the owners "undertaken in or arising out of this Operating Agreement shall in all respects be subject to and controlled by the definitions, terms, conditions and *substantive and procedural*

*provisions* of the Ownership Agreement," the drafters of the operating agreement clearly intended to incorporate by reference the arbitration clause in the ownership agreement. KG&E has not suggested any reasonable alternative meaning for this provision.

Moreover, the operating agreement provides that *"the term 'this Agreement' as used in the Ownership 'Agreement shall be deemed to include this Operating Agreement."* The arbitration clause in the ownership agreement states that any controversy between or among the owners "arising out of or relating to *this Agreement*, or any breach hereof or default hereunder," shall be submitted to arbitration at the request of any owner. Therefore, the arbitration clause *in the ownership agreement* requires arbitration of any controversy arising out of or relating to the operating agreement.

KG&E concedes that the controversy in this case arises out of and is related to the operating agreement. KPL has expressed its desire to have all issues resolved through arbitration. The agreements entered into among the owners of Jeffrey Energy Center give KPL this right. Therefore, we reverse the decision of the district court and remand with directions to grant KPL's application to compel arbitration.

Reversed and remanded.