(791 P.2d 742)

No. 64,220

FARMERS INSURANCE COMPANY, INC., *Appellee*, v. STEPHEN R. GILBERT, *Appellant*.

Opinion filed May 4, 1990.

*Dennis L. Phelps*, of Wichita, for the appellant.

*Stanford J. Smith, Jr.*, of Robbins, Tinker, Smith & Metzger, of Wichita, for the appellee.

Before LARSON, P.J., BRAZIL and DAVIS, JJ.

DAVIS, J.: This is a declaratory judgment action brought by Farmers Insurance Company, Inc., to determine whether Stephen Gilbert, its insured, is entitled to underinsured motorist benefits for injuries he received while riding his motorcycle. Gilbert contends that he is entitled to benefits under the uninsured motorist coverage provided by his automobile liability policies. Farmers contends that Gilbert's motorcycle policy is the only applicable policy and that no benefits are due thereunder. The trial court granted summary judgment for Farmers. Gilbert appeals. We reverse.

The parties submitted the issue on stipulated facts. Stephen Gilbert was injured when his motorcycle was struck by an automobile driven by Debra Onofrio. Onofrio's negligence was the sole cause of the collision, and Farmers Insurance Company, which was also her liability insurer, paid Gilbert $25,000, representing the limits of her policy. Gilbert's actual damages and expenses, however, were in excess of $50,000.

Gilbert was insured by Farmers under separate liability policies for his motorcycle, his van, and his automobile. The liability limits on the policies for the van and automobile were $50,000. The liability limit on the motorcycle policy, however, was only $25,000. Each policy also provided coverage against losses caused by uninsured or underinsured motorists. The exact language of the "underinsured motorist protection" will be quoted later. For now, it may be summarized as follows: If Gilbert were to be injured by a motorist whose liability limits were less than his own, Farmers would provide coverage for that portion of his loss falling between his own liability limits and the liability limits of the other motorist.

The issue is whether Gilbert may recover underinsured motorist benefits under either of his two automobile policies. If either of his two automobile policies applies, he is entitled to $25,000 in underinsured motorist benefits. If, however, his motorcycle policy is the only policy that applies, Gilbert is not entitled to any underinsured motorist benefits.

Because the facts were submitted by stipulation, and because the construction of a written instrument is a question of law, our standard of review is de novo. *American States Ins. Co. v. Hart-*

*ford Accident & Indemnity Co.*, 218 Kan. 563, Syl. ¶ 4, 545 P.2d 399 (1976); *Kansas Gas & Electric Co. v. Kansas Power & Light Co.*, 12 Kan. App. 2d 546, 551, 751 P.2d 146, *rev. denied* 243 Kan. 779 (1988).

Before taking up the issue raised by this appeal, a brief review of uninsured and underinsured motorist coverage in Kansas would be helpful.

As the automobile grew in popularity, a significant problem developed as motorists without insurance caused injuries for which they could not provide compensation. The Kansas Legislature responded to this problem in 1968 by requiring insurers to offer uninsured motorist coverage to all persons purchasing automobile liability policies. Under this coverage, an insured motorist who was injured by an uninsured motorist could collect the amount of damages to which he was entitled from his own insurer up to his policy limits. L. 1968, ch. 273, § 1 (codified as K.S.A. 40-284 [Weeks]); see Widiss, *Uninsured Motorist Coverage*, 40 J.K.B.A. 199 (1971). See generally 1 Widiss, Uninsured and Underinsured Motorist Insurance § 1.1 *et seq.* (2d ed. 1990).

The Supreme Court recognized the remedial purpose of this statute, and construed it liberally to provide coverage, holding:

"The purpose of legislation mandating the offer of uninsured motorist coverage is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation and this coverage is intended to provide recompense to innocent persons who are damaged through the wrongful conduct of motorists who, because they are uninsured and not financially responsible, cannot be made to respond in damages. [Citation omitted.] As remedial legislation it should be liberally construed to provide the intended protection." *Winner v. Ratzlaff*, 211 Kan. 59, 63-64, 505 P.2d 606 (1973).

See *Forrester v. State Farm Mutual Automobile Ins. Co.*, 213 Kan. 442, Syl. ¶¶ 1-3, 517 P.2d 173 (1973); *Stewart v. Capps*, 14 Kan. App. 2d 356, Syl. ¶ 1, 789 P.2d 563 (1990).

Despite the legislature's action and the liberal construction followed by the courts, two problems remained. First, a motorist could reject uninsured motorist coverage and be left without compensation if he were injured by an uninsured motorist. Second, a motorist with a high level of coverage could be injured by a motorist insured only to the legal minimum. If the damages to the injured motorist exceeded the legal minimum, the injured

motorist would be unable to collect, either from the other motorist or from his own insurer. In such a case, the injured motorist would have been better off if the other motorist had been entirely uninsured so that he would be able to collect under his own uninsured motorist coverage. See 2 Widiss, Uninsured and Underinsured Motorist Coverage § 31.1 *et seq.* (2d ed. 1990).

The legislature dealt with both of these problems in 1981, when it amended K.S.A. 40-284 for the first time. Uninsured motorist coverage became mandatory, although coverage above the statutory minimum for liability coverage could still be rejected. Uninsured motorist coverage was also required to contain "underinsured" motorist coverage. Under this new coverage, if the other motorist had liability insurance but the limits of liability were less than the insured's damages and less than the insured's uninsured motorist coverage, the insured could recover his excess damages from his own insurer up to his policy limits. L. 1981, ch. 191, § 1; Jerry, *New Developments in Kansas Insurance Law,* 37 Kan. L. Rev. 841, 878 (1989); Jerry, *Recent Developments in Kansas Insurance Law: A Survey, Some Analysis, and Some Suggestions,* 32 Kan. L. Rev. 287, 343-44 (1984).

Although the 1981 amendments generally broadened coverage, the legislature also authorized several new exclusions and limitations. L. 1981, ch. 191, § 1. Many of these exclusions were in apparent response to decisions finding coverage and had the effect of overruling those decisions, at least in part. See Jerry, 32 Kan. L. Rev. at 343-44. Two of these new exclusions or limitations are applicable to this case and will be discussed in detail later in our opinion.

The statute has since been amended in 1984, 1986, and 1988. None of these amendments is material here.

## COVERAGE

Gilbert argues that underinsured motorist coverage is "portable" in nature, not limited to the vehicle for which the underlying liability policy is purchased; it applies to an insured wherever he may be. Farmers argues that the automobile policies do not provide underinsured motorist coverage when the insured is operating a motorcycle; that coverage under his van or auto policy is excluded when the insured is occupying an owned vehicle not insured under those policies.

Farmers argues that the underinsured motorist coverage in the two automobile policies does not protect Gilbert while he is riding his motorcycle because a motorcycle is not a car. The express provisions of the two automobile policies undermine Farmers' argument. Coverage exists, subject to applicable exclusions and limitations, under the unambiguous terms of the policies. Farmers' argument to the contrary ignores the plain language of the coverage provisions and confuses underinsured motorist coverage with liability coverage.

The terms of the coverage provision are specified by statute. At the time Gilbert's policies were issued and at the time of Gilbert's accident, the statute read as follows:

"(a) No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state . . . unless the policy contains or has endorsed thereon, a provision with coverage limits equal to the limits of liability coverage for bodily injury or death in such automobile liability policy sold to the named insured for payment of part or all sums which the insured or the insured's legal representative shall be legally entitled to recover as damages from the uninsured owner or operator of a motor vehicle because of bodily injury, sickness or disease, including death, resulting therefrom, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such motor vehicle . . . .

"(b) Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle." K.S.A. 40-284.

The language of subsections (a) and (b) appears in the two automobile policies, which provide:

"PART II—UNINSURED MOTORIST
"Coverage C—Uninsured Motorist Coverage (Including Underinsured Motorists Protection)
"We will pay all sums which an **insured person** is legally entitled to recover as **damages** from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** sustained by the insured person. The **bodily injury** must be caused by **accident** and arise out of the ownership, maintenance or use of the **uninsured motor vehicle**."

■We note in passing that this coverage provision is flawed because it speaks only of *"uninsured* motor vehicles," which are defined in the definition section to mean vehicles without insurance. Thus, the policy, when read literally, does not provide coverage for injuries caused by vehicles that are *underinsured.* However, Farmers obviously meant to include underinsured vehicles in the coverage provision, as indicated by the caption over the coverage provision and by the damages formula for underinsured vehicles given later in this part of the policy. The parties also stipulated that the automobile policies did provide such benefits.

Immediately after the coverage provision, the two automobile policies contain an identical set of definitions. The definition that is material here is as follows:

"As used in this Part:
"1. **Insured person** means:
  "a. You or a **family member.**"

The actual formula for determining the amount payable is found under the heading "Other Insurance":

"1. Coverage for losses caused by an **underinsured motor vehicle** shall be limited to the difference between the **underinsured motorists coverage** limits provided in this part and the coverage limits provided in any applicable **bodily injury** liability bond or policy available to any party held liable for the **accident.**"

Gilbert is an "insured person," and, subject to an exclusion or other applicable limitation, he is protected against bodily injury caused by an uninsured or underinsured motor vehicle. The coverage provision does not condition or limit its coverage depending on the vehicle Gilbert is occupying when he is injured. See *Midwest Mutual Ins. Co. v. Farmers Ins. Co.*, 3 Kan. App. 2d 630, Syl. ¶ 3, 599 P.2d 1021, *rev. denied* 227 Kan. 927 (1979) ("Uninsured motorist coverage protects the named insured wherever he may be, whether in the described vehicle, another 'owned' vehicle, a non-owned vehicle, or on foot."). If coverage is to be limited because of the vehicle Gilbert is occupying, the limitation must come from an express limitation or exclusion authorized by the legislature and included in the two automobile policies.

Farmers' argument that a motorcycle is not a four-wheeled vehicle covered under the auto policies is flawed because it begins with the premise that the scope of uninsured motorist coverage is identical to the scope of liability coverage. Uninsured motorist coverage is first-party insurance, designed to protect the insured; liability insurance is third-party insurance, designed to protect not the insured, but persons injured by the insured. See Jerry, Understanding Insurance Law § 13D[a] (1987). The Supreme Court recognizes this distinction:

"[T]he purpose of the uninsured motorist law is to recompense innocent persons who are damaged through the wrongful act of uninsured motorists who are not financially responsible. Uninsured motorist coverage is not actually liability insurance, but more closely resembles limited accident insurance. It insures against losses occasioned by a limited number of tortfeasors." *Forrester*, 213 Kan. at 448.

It follows that uninsured motorist insurance will provide coverage in situations where liability insurance will not.

Farmers argues that coverage does not exist because "[a] motorcycle cannot be an insured car under" the automobile policies. This argument is correct only with respect to *liability* coverage. The automobile policies provide *liability* coverage for damages "arising out of the ownership, maintenance or use of a **private passenger car**, a **utility car**, or a **utility trailer**." A "private passenger car" and a "utility car" are both defined to include vehicles with at least four wheels. Thus, if Gilbert caused an accident while riding his motorcycle, *liability* coverage under his automobile policies would not exist. Insofar as uninsured/underinsured motorist coverage is concerned, however, Farmers' argument has no application. Subject to statutorily authorized limitations and exclusions, uninsured/underinsured motorist coverage applies no matter where the named insured is, or what vehicle the named insured is occupying, when the named insured is injured.

For this reason, Farmers' reliance on *Klamm v. Carter*, 11 Kan. App. 2d 574, 730 P.2d 1099 (1986), is misplaced. Klamm was injured by an uninsured motorist while riding his uninsured motorcycle. Because of a statutorily authorized exclusion for injuries sustained by Klamm while occupying an uninsured motor vehicle owned by him, coverage did not exist. Klamm attempted to avoid the exclusion by arguing that his motorcycle was, in fact,

insured under the policy because he had acquired his motorcycle the day before the accident and that, under the policy, a newly acquired "private passenger car or utility car" was included within the term "insured car" if Farmers was notified within 30 days of the new vehicle's acquisition. We rejected this argument, holding that a motorcycle could not reasonably be viewed as an "insured car" since a "private passenger car" and a "utility car" were both defined as having "at least four wheels." 11 Kan. App. 2d at 577. Although not expressly stated, it is obvious that Klamm was attempting to create *liability* coverage for his motorcycle in order to avoid the exclusion. Because Gilbert is not attempting to create liability coverage under his automobile policies for his motorcycle, which was insured under a separate policy, the relied-upon holding in *Klamm* does not apply to this case.

Farmers' second argument is that coverage is excluded under the terms of the two automobile policies because Gilbert was riding a vehicle that was not insured under either policy. Gilbert asserts that the exclusion in the two automobile policies is broader than the exclusion authorized by statute and is therefore unenforceable. We agree.

In analyzing coverage under the policies, two limitations or exclusions of coverage authorized by the 1981 amendments are applicable. The first relates to "stacking." The Supreme Court has defined "stacking" as follows:

" 'Stacking,' in connection with uninsured motorist coverage, refers to the right to recover on two or more policies in an amount not to exceed the total of the limits of liability of all policies up to the full amount of the damages sustained." *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, 608, 549 P.2d 1354 (1976).

Prior to 1981, the Supreme Court had consistently allowed insureds to stack their uninsured motorists benefits. In 1981, however, the legislature enacted K.S.A. 40-284(d), which provides:

"(d) Coverage under the policy shall be limited to the extent that the total limits available cannot exceed the highest limits of any single applicable policy, regardless of the number of policies involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid or vehicles involved in an accident."

This subsection overruled at least six Supreme Court decisions holding that uninsured motorist benefits could be stacked. See *Davis v. Hughes*, 229 Kan. 91, 98, 622 P.2d 641 (1981); *Welch v. Hartford Casualty Ins. Co.*, 221 Kan. 344, 348-50, 559 P.2d 362 (1977); *Clayton v. Alliance Mutual Casualty Co.*, 212 Kan. 640, Syl. ¶ 2, 512 P.2d 507 (1973); *Rosson v. Allied Mutual Ins. Co.*, 203 Kan. 795, 457 P.2d 42 (1969); and *Sturdy v. Allied Mutual Ins. Co.*, 203 Kan. 783, 457 P.2d 34 (1969).

The motorcycle, van, and auto policies in this case contain an identical anti-stacking provision under the heading "other insurance":

"4. If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability."

The stacking exclusion prevents Gilbert from recovering on more than one policy, but the language used does not prevent him from choosing the one policy with the highest limits and recovering on that one, single policy.

The second applicable limitation or exclusion authorized by the 1981 amendments is found in K.S.A. 1989 Supp. 40-284(e)(1):

"(e) Any insurer may provide for the exclusion or limitation of coverage:
"(1) When the insured is occupying or struck by an *uninsured* automobile or trailer owned or provided for the insured's regular use." (Emphasis added.)

Prior to 1981, the appellate courts of this state held that uninsured motorist coverage protected the insured "wherever he may be, whether in the described vehicle, another 'owned' vehicle, a non-owned vehicle, or on foot." *Midwest Mutual Ins. Co. v. Farmers Ins. Co.*, 3 Kan. App. 2d 630, Syl. ¶ 3.

This broad view of coverage could lead, however, to odd results in some situations. In *Barnett v. Crosby*, 5 Kan. App. 2d 98, 612 P.2d 1250, *rev. denied* 228 Kan. 806 (1980), for example, Barnett was injured by an uninsured motorist while riding his motorcycle. Barnett had rejected uninsured motorist coverage on his motorcycle policy; however, he did have uninsured motorist coverage under an automobile policy issued by a different company. The automobile insurer denied coverage based on an ex-

clusion for "injuries arising as a result of occupying a vehicle (other than the insured vehicle) which is owned by the named insured." 5 Kan. App. 2d at 98-99. We held that, since the statute requires protection of the insured wherever he may be, it was apparent that the "exclusion clause is an attempt to dilute this mandated coverage and consequently is void." 5 Kan. App. 2d at 99.

*Merritt v. Farmers Insurance Co.*, 7 Kan. App. 2d 705, 647 P.2d 1355 (1982), which was decided under the pre-1981 law, is another example of an odd result. The plaintiff was a passenger in an automobile she owned but had not insured. The automobile was forced off the road by a hit-and-run driver and plaintiff sought to recover uninsured motorist benefits as an additional "insured" under the driver's policy. The trial court found that plaintiff was not an "innocent person" since she had violated the insurance statutes by failing to insure her automobile. We held that, even though the legislature probably did not intend to require coverage for persons in the plaintiff's position, plaintiff was an "insured" under the plain language of the policy and such a result was not contrary to public policy. 7 Kan. App. 2d at 711.

By adopting K.S.A. 40-284(e)(1), the legislature prevented the results reached in cases such as *Barnett* and *Merritt*. It is important to note, however, that the exclusion authorized by the statute is a narrow one. It applies only to *uninsured* vehicles. The legislature's intent in drafting such a narrow exclusion was apparently limited to preventing persons who had failed to insure their own vehicles from recovering on the policies of others or on policies of their own issued for other vehicles.

The narrow scope of the exclusion has led Dean Robert Jerry to the following conclusion:

"Plainly, it is no longer true that the uninsured motorist coverage mandated by the statute protects the insured 'wherever he may happen to be.' However, earlier Kansas cases invalidating exclusions for injuries arising as a result of occupying a vehicle (other than the insured vehicle) owned by the named insured do not seem to be affected by the amendments to section 284, since the amendments only authorize an exclusion for occupying an *uninsured* automobile owned by the insured or provided for the insured's use." Jerry, 32 Kan. L. Rev. at 344.

We agree. Coverage may not be excluded for injuries arising out of the use of another owned vehicle unless the other owned

vehicle is *uninsured*. See *Klamm v. Carter*, 11 Kan. App. 2d at 578 (the exclusions authorized by K.S.A. 40-284(e) "should be strictly construed against the insurer because the statute is remedial legislation and insurance policies are construed against the insurer").

In this case, the motorcycle owned and operated by Gilbert was *insured*. The exclusions contained in the two automobile policies are not limited to uninsured automobiles owned or regularly used by the insured. Both policies provide:

"This coverage does not apply to **bodily injury** sustained by a person:
"1. While **occupying** any vehicles owned by or provided for the regular use of you or a **family member** for which insurance is not afforded *under this policy*." (Emphasis added.)

The broader scope of the policy exclusion is illustrated by the facts of this case. Under the policies, Gilbert cannot recover for injuries sustained while riding his motorcycle because, although his motorcycle was insured, it was insured *under a different policy* than his automobiles. However, under the statute, Gilbert may recover for his injuries because his motorcycle was not *uninsured*.

Because the exclusion in both policies is broader than that authorized by statute, it is unenforceable. In one of its first opinions dealing with uninsured motorist coverage, the Supreme Court held:

"[I]nsurance policy provisions which purport to condition, limit, or dilute the broad, unqualified uninsured motorist coverage mandated by [K.S.A. 40-284] are void and of no effect." *Clayton v. Alliance Mutual Casualty Co.*, 212 Kan. 640, Syl. ¶ 1.

The court expanded on this holding in its order denying a motion for rehearing:

"The provisions of the statute (K.S.A. 1972 Supp., 40-284) must be considered a part of every automobile liability policy the same as if written therein. [Citations omitted.] Where the policy's provisions regarding uninsured motorists coverage are more restrictive than the relevant statutory provisions requiring such coverage, the requirements of the statute will prevail. [Citation omitted.] Attempts by the insurer to diminish the statutorily mandated uninsured motorists' protection are contrary to public policy. [Citation omitted.] That the Legislature requires an uninsured motorists provision in every policy, unless expressly waived by the insured, added to the fact that a premium is collected for such protection, must result in a policyholder receiving what he has paid for on each policy, up to the amount of his

damages." *Clayton v. Alliance Mutual Casualty Co.*, 213 Kan. 84, 84-85, 515 P.2d 1115 (1973).

In two subsequent cases, the court held:

"Insurance policy provisions which purport to condition, limit, or dilute the broad, unqualified uninsured motorist coverage mandated by K.S.A. 40-284 are void and unenforceable." *Simpson v. Farmers Inc. Co.*, 225 Kan. 508, Syl. ¶ 2, 592 P.2d 445 (1979); *Van Hoozer*, 219 Kan. 595, Syl. ¶ 3.

Relying on these cases, this court has recently held:

"The provisions of the Kansas Uninsured Motorist Statutes, K.S.A. 40-284 *et seq.*, are mandatory and must be considered to be a part of every insurance policy written in this state. Any attempt by an insurer to diminish the statutorily mandated uninsured motorist protection provided by the statute is void and contrary to public policy." *State Farm Mut. Auto. Ins. Co. v. Cummings*, 13 Kan. App. 2d 630, Syl. ¶ 1, 778 P.2d 370, *rev. denied* 245 Kan. 785 (1989).

See *Stewart v. Capps*, 14 Kan. App. 2d 356, Syl. ¶ 3, 789 P.2d 563 (1990).

Against this weight of authority, Farmers attempts to rely on a statement in *DeWitt v. Young*, 229 Kan. 474, 480, 625 P.2d 478 (1981), that "exclusions in *liability* insurance policies are valid and enforceable as to amounts exceeding coverage required in financial responsibility laws." (Emphasis added). Uninsured motorist coverage is not the same as liability coverage. *Forrester*, 213 Kan. at 448. Gilbert is entitled to recover underinsured motorist benefits under one, but not both, of his two automobile policies.

## ATTORNEY FEES

Gilbert claims that he is entitled to attorney fees under the following provision found in the automobile policies under the heading "PART I—Liability":

"Supplementary Payments

"In addition to our limit of liability, we will pay these benefits as respects an **insured person:**

. . . .

"6. Other reasonable expenses incurred at our request."

Gilbert reasons that, because Farmers filed this declaratory judgment action, his costs of defending it were incurred at Farmers' expense.

The relied-upon provision is found in the portion of the policy providing liability coverage. No such provision is present in the portion of the policy providing uninsured motorist coverage.

Gilbert also argues that he is entitled to attorney fees under K.S.A. 40-256.

K.S.A. 40-256 provides:

"That in *all actions* hereafter commenced, in which judgment is rendered against any insurance company . . . if it appear from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs." (Emphasis added.)

We note that, although this action is a declaratory action by the insurer rather than a suit by the insured, the statute still applies. The fact that the insurer got to the courthouse first is not important; the fact that Gilbert was forced to hire an attorney to collect the benefits to which he is entitled is.

In cases where an insurer has denied coverage, on the uncontroverted facts, based upon a mistaken understanding of the coverage mandated or the exclusions permitted by statute, the appellate courts of this state have generally held that the insurer was not "without just cause or excuse" if there was a genuine issue, raised in good faith, as to coverage. In practice, this has often meant that the insurer's interpretation of the statute in drafting its policy and its subsequent denial of coverage must be reasonable.

In *Forrester v. State Farm Mutual Automobile Ins. Co.*, 213 Kan. 442, the court, after holding that an exclusion was void because it diluted the coverage required by statute, addressed the question of attorney fees:

"Whether attorney fees are to be allowed must depend upon the facts and circumstances of each case [citations omitted]. We believe the dispute between the parties herein constituted a good faith legal controversy as to the policy-statute interpretation and was of first impression in this jurisdiction. Moreover, as has been pointed out in this opinion, authorities from other states are divided concerning the validity of exclusion (b) with respect to uninsured motorist statutes. Under the circumstances related, we think defendant, though mistaken, has not been unreasonable in assuming its

position. Hence, we do not believe the allowance of attorney fees to plaintiff is justified." 213 Kan. at 452.

The court expanded on this holding a few years later in *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, 549 P.2d 1354 (1976). In that case, the facts were both unusual and complicated. Plaintiff's husband added uninsured motorist coverage to his policies in May 1968, shortly before such coverage became governed by statute. 219 Kan. at 597. Later that morning, he was killed by an uninsured motorist. The insurer denied most of plaintiff's claim for uninsured motorist benefits on the basis that, under the policy, coverage was reduced by the amount of workers compensation received. The trial court held that, on the facts of the case, K.S.A. 40-284 applied to the policies, even though the statute had not yet gone into effect at the time, and that the statute did not permit the reduction of benefits by the amount of workers compensation received. The Supreme Court affirmed. 219 Kan. at 598-608.

The trial court also held, however, that attorney fees were not recoverable because a good faith legal controversy existed. Plaintiff cross-appealed on this issue, and the Supreme Court affirmed, writing:

"Plaintiff argues the policy defense relied on by defendant prior to the commencement of litigation was clearly unfounded. As previously noted, defendant originally based its refusal to pay on the policy exclusion relating to the reduction of benefits by the amount of workmen's compensation received. Although defendant was notified by the insurance commissioner prior to trial that its defense would not be valid under the new uninsured motorists statute, there was substantial cause for defendant to believe the new statute would not apply since it did not become effective until after the accident. We have heretofore demonstrated the error in defendant's reasoning. Yet the misconception upon which defendant based its refusal was not such that would indicate an arbitrary, capricious or bad faith motive. The question of the application of the uninsured motorist statute to an accident occurring prior to its effective date was one of first impression in this state. We cannot say defendant refused plaintiff's claim without just cause or excuse." 219 Kan. at 615.

Thus, if an insurer has "substantial cause" to believe that its interpretation of statutory requirements is correct, and it denies coverage in good faith, fees may not be awarded.

This court has reached similar holdings. In *Hand v. State Farm Mut. Auto Ins. Co.*, 2 Kan. App. 2d 253, 577 P.2d 1202, *rev. denied* 225 Kan. 844 (1978), the insurer denied a claim for personal injury protection (PIP) survivor benefits based on its understanding of the word "loss" as used in the No-Fault Act and in its policy. 2 Kan. App. 2d 255-56. After reviewing the legislative history of the act, we held for plaintiff. 2 Kan. App. 2d at 259. We denied fees, however, holding: "[D]efendant was not guilty of a frivolous and unfounded denial of liability; the legal issue involved is one of first impression and defendant's position was not without merit." 2 Kan. App. 2d at 261. See *Whitaker v. State Farm Mut. Auto Ins. Co.*, 13 Kan. App. 2d 279, 285, 768 P.2d 320 (1989) ("the presence of a genuine issue raised in good faith bars an award of attorney fees").

Whether fees should be awarded in this case presents a close question. Farmers' first argument—that uninsured motorist coverage does not apply when the insured is driving another vehicle—is clearly unfounded. Farmers' second argument—that coverage was excluded under the policies—although unsound, is not without merit. The scope of the exclusion authorized by K.S.A. 1989 Supp. 40-284(e)(1) has never before been litigated. Farmers, as we view the record, has been acting in good faith, and, although the question is perhaps close, Farmers' interpretation of the statute in drafting its policy and its subsequent denial of coverage were not unreasonable. We therefore conclude that fees should not be awarded.

Reversed.