(764 P.2d 1256)

No. 61,990

WESTERN CASUALTY AND SURETY COMPANY, *Appellant,* v. TRINITY UNIVERSAL INSURANCE COMPANY OF KANSAS, INC., *Appellee.*

Opinion filed November 23, 1988.

*Theresa Shean Hall* and *Glenn E. McCann*, of Knipmeyer, McCann, Fish & Smith, of Kansas City, Missouri, for the appellant.

*Leonard R. Frischer*, of Turner and Boisseau, Chartered, of Overland Park, for the appellee.

Before Briscoe, P.J., Larson, J., and David F. Brewster, District Judge, assigned.

Briscoe, J.: This is a declaratory judgment action brought by Western Casualty and Surety Company (Western) to obtain an adjudication of the respective liabilities of Western and Trinity Universal Insurance Company of Kansas, Inc., (Trinity) under policies of insurance each had issued on a tavern and its contents. Western's policy contained an "other insurance" excess clause; Trinity's policy contained an "other insurance" pro rata clause. Upon cross-motions for summary judgment, the district court construed the "other insurance" clauses contained in each policy to require a pro rata contribution from each company. Western appeals.

On February 9, 1985, Western issued a property insurance policy on a building at 106 Amity, Louisburg, Kansas, to Chris and Barbara Renner. The policy listed Chris Renner and/or Barbara Renner as the named insureds and the Bank of Louisburg as mortgagee. The building was insured for $160,000 and the contents were insured for $5,000.

On May 18, 1985, Trinity issued a property insurance policy on the same building to S.J. Wolfe, Inc., d/b/a Sandy's Den. Wolfe was purchasing the building from the Renners pursuant to a contract for deed. Wolfe, d/b/a Sandy's Den, was the named insured in this policy and the Bank of Louisburg and the Renners were designated as mortgagees. The building was insured for $140,000 and the contents were insured for $40,000.

On July 30 and September 23, 1985, fires caused losses to the building and contents of $94,000. As a result of the fires, a claim for insurance proceeds was made against both Western and Trinity in the amount of $94,000. Approximately $79,000 of the claim represented damage to the building. The remaining $15,000 was attributable to the loss of or damage to the contents. Both insurers agreed that the Bank of Louisburg, as mortgagee under both policies, was owed payment for the loss. Therefore, Western and Trinity agreed to each pay a pro rata share of the claim while reserving any rights or claims each may have under

their respective policies. Western contributed $43,470.60 toward payment of the claim. Western then filed this declaratory judgment action seeking recovery of its contribution.

Upon consideration of cross-motions for summary judgment, the court overruled Western's motion and granted Trinity summary judgment. The district court reviewed the "other insurance" clause contained in each policy and determined the loss should be prorated between the two parties. In doing so, the court found the language contained in Trinity's "other insurance" clause expressly limited its exposure to its prorated share of the total coverage available for the loss. In addition, the court specifically adopted and incorporated the rationale contained in *Western Cas. & Surety Co. v. Universal Underwriters Ins. Co.*, 232 Kan. 606, 657 P.2d 576 (1983), and *Lamb-Weston et al. v. Ore. Auto. Ins. Co.*, 219 Or. 110, 341 P.2d 110, 346 P.2d 643 (1959). Although the court does not explain its application of these cases to the case at bar, Trinity construes this reference to mean that "to the extent the Trinity and Western 'other insurance clauses' were repugnant, the clauses would be disregarded and the loss would be prorated between the two insurers." Since we cannot flesh out the court's ruling by reference to either motion filed by the parties because neither was included in the record on appeal, we will accept Trinity's construction as a reasonable interpretation of the district court's order.

On appeal, Western contends that an excess clause in its policy protects it from any liability in this case. Western argues it is not liable for any portion of the loss until Trinity's policy limits are exhausted. Since the loss was below Trinity's policy limits, Western argues it has no exposure. Trinity contends a pro rata clause in its policy is mutually repugnant to Western's excess clause and that each insurer should pay a pro rata share of the claim. Trinity argues there is other insurance which covers the property and its pro rata clause is triggered whether the other insurance is collectible or not. Therefore, even if the court were to determine that the insureds could not collect from Western, Trinity should be liable for no more than its pro rata share of the loss.

As a general rule, the construction of a written instrument is a question of law and an appellate court may construe the instrument and determine its legal effect. *Kennedy & Mitchell, Inc. v.*

*Anadarko Prod. Co.,* 243 Kan. 130, 133, 754 P.2d 803 (1988). Insurance is a matter of contract and the parties have the right to employ whatever terms they wish and the courts will not rewrite them, so long as such terms do not conflict with pertinent statutes or public policy. *Gibson v. Metropolitan Life Ins. Co.,* 213 Kan. 764, 770, 518 P.2d 422 (1974); *Farmers Ins. Co. v. Prudential Property & Cas. Ins. Co.,* 10 Kan. App. 2d 93, 95, 692 P.2d 393 (1984), *rev. denied* 237 Kan. 886 (1985). The voluntary allocation of risk between themselves by subscribing insurers is in accord with the general rule that a prerequisite to enforcing contribution between insurers is that their policies insure the same interest. However, the right of insurers to this allocation of risk must be determined not by an adjustment of equities, but by the provisions of the contracts which were made. *New Hampshire Ins. Co. v. American Employers Ins. Co.,* 208 Kan. 532, 536, 492 P.2d 1322 (1972).

"Other insurance" clauses have become commonplace in property insurance policies. Jerry, *Recent Developments in Kansas Insurance Law: A Survey, Some Analysis, and Some Suggestions,* 32 Kan. L. Rev. 287, 312 (1984). There are three general categories of "other insurance" provisions. *Pro rata* clauses provide that the insurer will pay a prorated share of a loss, usually in the proportion the policy limits bear to the total limits of all valid and collectible insurance. *Excess* clauses provide that the insurer's liability will be only the amount by which the loss exceeds the coverage of all other valid and collectible insurance. *Escape* clauses provide that the policy affords no coverage when there is other valid and collectible insurance. *Western Cas. & Surety Co. v. Universal Underwriters Ins. Co.,* 232 Kan. at 610-11. The court in *Western Cas.* found that "other insurance" clauses were not in violation of public policy, but were merely invoked by insurance companies to establish priority as to which policy should be exhausted first in satisfying the liability. 232 Kan. at 609.

Western's policy contains both a pro rata and an excess clause, but the excess clause appears controlling. Lines 86-89 of policy No. CM 130-10-85 state:

"This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not."

In addition, lines 25-27 also state:

"Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto."

The foregoing policy provisions are supplemented by additional provisions in an endorsement, form CF 00 13, which pertains to the building, and form CF 00 14, which applies to the contents. Both forms contain both pro rata and excess clauses which provide:

"(A) If at the time of loss there is other insurance written in the name of the Insured upon the same plan, terms, conditions and provisions as contained in this policy, herein referred to as Contributing Insurance, this Company shall be liable for no greater proportion of any loss than the amount of insurance under this policy bears to the whole amount of insurance covering such loss.

"(B) If at the time of loss there is other insurance other than that as described in (A) above, this Company shall not be liable for any loss hereunder until:

"(1) the Liability of such other insurance has been exhausted, and

"(2) then for only such amount as may exceed the amount due from such other insurance whether collectible or not."

The introductory paragraphs of both endorsement forms state:

"This form cancels and replaces any coverage on [buildings/personal property] provided under any other form made a part of this policy, but only with respect to [buildings/personal property] to which this form is shown to be applicable."

Western reads this provision in the endorsement, along with the previously quoted statement in the policy that the amount of insurance may be limited by the endorsements, to mean that the "other insurance" clauses in the endorsements control. Western also contends the excess clause in subsection (B) applies in this case, and not the pro rata clause in subsection (A). Western argues the pro rata clause does not apply because the Western and Trinity policies have different named insureds. Subsection (A) applies only to "other insurance written in the name of the Insured upon the same plan, terms, conditions and provisions as contained in this policy." Trinity does not dispute any of Western's interpretations of these provisions, nor its conclusion that its excess clause is the clause applicable to this loss. We agree with Western's analysis and conclude that the excess clause contained in the endorsement applies to this loss.

Trinity's policy (form CF-00-11, policy No. 2944699) contains a pro rata clause:

"1. APPORTIONMENT: This Company shall not be liable for a greater proportion of any loss . . . from any peril or perils included in this policy than

(A) the amount of insurance under this policy bears to the whole amount of fire insurance covering the property, or would have covered the property except for the existence of this insurance, whether collectible or not, and whether or not such other fire insurance covers against the additional peril or perils insured against hereunder, nor (B) for a greater proportion of any loss . . . than the amount hereby insured bears to all insurance, whether collectible or not, covering in any manner such loss, or which would have covered such loss except for the existence of this insurance."

Although each policy has a different named insured, both policies insured the interest of the same mortgagee pursuant to a standard mortgage clause. Since both policies insured the same interest, the "other insurance" clauses contained in the policies are enforceable to allow contribution between the insurers. *New Hampshire Ins. Co. v. American Employers Ins. Co.*, 208 Kan. at 536; *Root v. Hamilton Mut. Ins. Co.*, 116 Mich. App. 596, 323 N.W.2d 298 (1981).

Were we addressing a conflict between two excess clauses, the answer would be clear. It is the generally accepted rule when two excess coverage clauses are in conflict, the excess clauses are disregarded and liability is prorated. See Comment, *Insurance: Apportionment of Loss Between Conflicting Excess "Other Insurance" Clauses in Automobile Liability Insurance*, 23 Washburn L.J. 195, 202 (1983). Kansas adopted this rule in *Western Cas. & Surety Co. v. Universal Underwriters Ins. Co.*, 232 Kan. at 611, where the court held that identical, or nearly identical, "other insurance" excess clauses are mutually repugnant and must be disregarded, rendering each company liable for a pro rata share of the loss since if the clauses were given literal effect neither policy would cover the loss and such a result would produce an unintended absurdity. See *Hennes Erecting Co. v. Nat. Un. Fire Ins. Co.*, 813 F.2d 1074, 1077 (10th Cir. 1987). In the present case, Western asks us to extend the same rule which our Supreme Court has applied to conflicting excess clauses to conflicts between excess and pro rata clauses.

The question presented is one of first impression in Kansas and requires this court to determine whether a pro rata clause in one policy and an excess clause in another can be reconciled to give effect to the intent of the contracting parties, or whether the clauses are irreconcilable and require that this court disregard the contractual language and impose a pro rata share of the loss upon each insurance company. Our options range from: (1)

requiring the insurer with the pro rata clause to pay only its pro rata share and leave the remainder unpaid; to (2) requiring the insurer with the pro rata clause to cover all of the loss up to the limits of its policy; to (3) prorating the loss between the insurers.

These three potential results are the product of three possible approaches to the conflict between excess and pro rata clauses. First, both policies may be strictly construed with the result that the insureds are only partially covered. Second, the excess clause in Western's policy should control with the result that Trinity becomes liable for the entire claim. Third, the conflicting "other insurance" clauses may be held mutually repugnant and disregarded with the result that the coverage is prorated between the two policies.

The first approach is undesirable. Insurers may not use unclear policy clauses to defeat the coverage reasonably expected by the insured. *Gowing v. Great Plains Mutual Ins. Co.*, 207 Kan. 78, 81, 483 P.2d 1072 (1971). Were the two clauses in the present case strictly read, the insureds could receive coverage for only half of their loss, despite their having purchased insurance coverage amounting to well over three times the loss. We have found no jurisdiction which strictly construes conflicting policy clauses to the detriment of the insured.

The second approach is the interpretation adopted by the majority of jurisdictions which have considered conflicting pro rata and excess clauses. An annotation at 12 A.L.R.4th 993 collects cases from over 20 different jurisdictions which have taken the approach that, where an excess clause conflicts with a pro rata clause, the policy with the pro rata clause should be applied first up to its stated limit and that resort should be had to the policy with the excess clause only after the other insurance has been exhausted. See 16 Couch on Insurance 2d § 62:72, pp. 530-32 (rev. ed. 1983).

The third approach disregards the pro rata and excess language contained in the conflicting "other insurance" clauses and prorates the liability between the insurers. This is the rule adopted by the Oregon court in *Lamb-Weston*, 219 Or. 110, where the court held:

"In our opinion, whether one policy uses one clause or another, when any come in conflict with the 'other insurance' clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto." 219 Or. at 129.

While this approach is tempting in its simplicity and ease of application, only a few jurisdictions have followed the *Lamb-Weston* rule. See, for example, *Globe Indemnity Co. v. Capital Insurance & Surety Co.*, 352 F.2d 236 (9th Cir. 1965); *Werley v. United Services Automobile Association*, 498 P.2d 112 (Alaska 1972); *Sloviaczek v. Estate of Puckett*, 98 Idaho 371, 565 P.2d 564 (1977); *Lamastus & Associates, Inc. v. Gulf Insurance Co.*, 260 So.2d 83 (La. App. 1972); *Travelers Insurance Co. v. Lopez*, 93 Nev. 463, 567 P.2d 471 (1977).

Western contends that Kansas adheres to the majority rule, citing *Maryland Cas. Co. v. American Family Insurance Group*, 199 Kan. 373, 429 P.2d 931 (1967). In *Maryland Cas. Co.*, the court determined that the excess coverage clause of a policy issued to a driver of an automobile was superior to the pro rata clause in a policy issued to the owner of an automobile. Western's reliance on this case appears to be misplaced. Contrary to Western's reading of *Maryland Cas. Co.*, the court did not construe the conflicting "other insurance" provisions to determine whether each or both controlled. The court instead relied upon a distinction between the owner and the driver and concluded the owner's policy was the primary policy and thus should provide contribution up to the limit of its coverage.

A case which addresses the relative merits of the majority rule and the *Lamb-Weston* rule is *Jones v. Medox, Inc.*, 430 A.2d 488 (D.C. App. 1981). The court in *Jones* first stated that most courts attempt whenever possible to reconcile dissimilar "other insurance" clauses by giving effect to the intent of the parties as reflected in the language of the clause.

"In order to reconcile a pro rata clause and an excess clause and to interpret the clauses so as to give effect to the intent of the parties, these courts reason that
'[W]here an excess clause is inserted in a typical . . . liability insurance policy the usual intent of the insurer is that the policy will afford only *secondary* coverage when the loss is covered by "other insurance." On the other hand, a provision that limits a policy to only pro rata liability in the event of concurrent coverage usually is intended to become effective only when other valid and collectible *primary* insurance is available. [Comment, *Concurrent Coverage in Automobile Insurance*, 65 Colum. L. Rev. 319, 328 (1965) (citations and footnote omitted: emphasis in original).]'
Stated another way, these courts assume that the standard phrase 'other valid and collectible insurance' means other valid and collectible *primary* insurance. It follows, then, that the policy containing the pro rata clause is other valid and collectible primary insurance that triggers application of the excess clause in the

second policy. The excess clause in the second policy therefore is given full effect and that carrier is liable only for the loss after the primary insurer had paid up to its policy limits. The policy containing the excess clause, however, is not considered to be other valid and collectible primary insurance for the purpose of triggering the operation of the pro rata clause, because when a stated contingency occurs, that is, when there is other valid and collectible primary insurance available to the insured, the policy containing the excess clause becomes secondary coverage only." 430 A.2d at 491.

The court in *Jones* goes on to address the *Lamb-Weston* rule:

"The *Lamb-Weston* rule presents an appealingly simple and no-nonsense way to deal with the vagaries of insurance policies. A principal concern of courts adopting the rule apparently is that one insurance company is getting 'stuck' and that regardless of the intent of the contracting parties as expressed in their 'other insurance' clauses, two companies covering the same risk should pay equally. Courts swayed by this concern, however, have failed to recognize that the insurance companies have no contractual relationship with each other, and one company hardly needs to be protected from the other. Neither insurance company is getting 'stuck' for anything more than it contracted to provide for its insured. Moreover, courts applying the *Lamb-Weston* rule ignore a basic rule of contracts requiring consideration of all the language in a policy to determine its meaning and intent. By sweeping away the contractual language and, perhaps, the negotiated intent of the parties, these courts effectually are legislating mandatory pro rata clauses for insurance policies having 'other insurance' provisions. Courts generally should take such drastic action only when presented with clearly irreconcilable provisions." 430 A.2d at 492-93.

We are persuaded, after examining the relative merits of each rule, that the majority rule is the better approach. The pro rata clause and the excess clause at issue in this case are not in conflict or mutually repugnant. As stated in *Jones*, interpretation of these clauses under the majority view is reasonable and fair:

" 'A construction which will give a fair meaning to both terms, as used in "other insurance" clauses "is that the *excess* provision alone controls in every situation which falls within its terms . . . and that the *prorate [sic]* provision alone governs in . . ., other situations, for example, when more than one [primary] policy has been issued to the same person." [Citations omitted.]' " 430 A.2d at 493.

As previously stated, the policy containing the pro rata clause is other collectible primary insurance which triggers the excess clause in the second policy. The policy containing the excess clause is not considered to be other valid and collectible primary insurance for the purpose of triggering the pro rata clause. The policy containing the excess clause becomes secondary coverage only.

Reversed and remanded for further proceedings.