No. 66,859

ASHLEY BALL, by and through her father and next friend, JOSEPH BALL, *Appellee*, v. MIDWESTERN INSURANCE COMPANY, *Appellant*.

(829 P.2d 897)

Opinion filed April 10, 1992.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause, and *Rodney K. Murrow* and *F. Russell Peterson*, of the same firm, were with him on the briefs for appellant.

*John M. Parisi*, of Shamberg, Johnson, Bergman & Morris, Chartered, of Overland Park, argued the cause, and *Victor A. Bergman*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: Ashley Ball, an infant passenger, was injured when the car owned and driven by her mother was hit by a train. Ashley, through her father Joseph Ball, sought uninsured motorist benefits under a policy issued to her mother by Midwestern Insurance Company on another vehicle. When Midwestern denied coverage, Ball filed this declaratory judgment action. The district court granted Ball's motion for summary judgment, finding Ashley was covered by her mother's policy. Midwestern appeals.

Ashley is the daughter of Joseph and Stephanie Ball. In May 1987, Stephanie's mother gave them a 1977 Chevrolet Chevette. The Chevette was titled in Joseph's and Stephanie's their names and was uninsured. The Balls knew it was illegal to drive an uninsured vehicle, but Joseph drove it to work five days a week. Stephanie did not drive the Chevette without Joseph's permission and did not have a set of keys. Prior to the accident, Ashley had ridden in the Chevette only a few times.

In September 1987, Joseph and Stephanie acquired a 1985 Chevrolet Nova, which Stephanie usually drove thereafter. The Nova was insured by a policy issued by Midwestern Insurance Company. Stephanie took Ashley to the babysitter every day in the Nova. In the evenings, and on weekends, Stephanie and Joseph would usually drive the Nova.

On the day of the accident, April 10, 1988, Stephanie borrowed the Chevette because of mechanical difficulties with the Nova. At the time of the collision 13-month-old Ashley occupied an infant seat in the rear of the Chevette. The Chevette stalled on some railroad tracks, Stephanie was unable to start it, and a train struck the car. Ashley sustained permanent injuries as a result of the accident.

Because there was no insurance on the Chevette, Ball sought uninsured motorist benefits in the amount of $25,000 under the

Nova's policy. Midwestern denied coverage and Ball filed this declaratory judgment action. Midwestern filed a motion for judgment on the pleadings, which the district court denied.

Both parties moved for summary judgment. The district court granted Ball's motion for summary judgment upon a finding the Chevette was not provided for the regular use of Ashley within the meaning of the exclusion authorized by K.S.A. 40-284(e)(1). Thus, Ashley was covered by the uninsured motorist provision of Stephanie's policy with Midwestern on the Nova.

The issue on appeal is whether the district court erred in finding Ashley, as an insured under the policy, is entitled to uninsured motorist benefits.

In Kansas, every policy of motor vehicle liability insurance is required to provide a minimum coverage for the uninsured motorist of $25,000 per person and $50,000 per accident, within certain exclusions and limitations of coverage. K.S.A. 40-3107(e), (h), (i). This court has stated the purpose of this legislative mandate as follows:

" 'The purpose of legislation mandating the offer of uninsured motorist coverage is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation and this coverage is intended to provide recompense to innocent persons who are damaged through the wrongful conduct of motorists who, because they are uninsured and not financially responsible, cannot be made to respond in damages. [Citation omitted.] As remedial legislation it should be liberally construed to provide the intended protection.' " *Stewart v. Capps*, 247 Kan. 549, 551, 802 P.2d 1226 (1990) (quoting *Winner v. Ratzlaff*, 211 Kan. 59, 63-64, 505 P.2d 606 [1973]).

Liability insurance is third-party insurance and designed to protect persons injured by the insured, not to protect the insured. In contrast, uninsured motorist coverage is first-party insurance, designed to protect the insured. Uninsured motorist insurance provides coverage to the insured and is not tied or limited to actual occupancy of a particular vehicle. Instead, uninsured motorist coverage protects the insured, whether in a described vehicle, a non-owned vehicle, or on foot. See *Farmers Ins. Co. v. Gilbert*, 14 Kan. App. 2d 395, 401, 791 P.2d 742, *aff'd as modified* 247 Kan. 589, 802 P.2d 556 (1990). K.S.A. 40-284(e) provides for certain exclusions and limitations in motor vehicle coverage. "Insurance policy provisions which purport to condition, limit, or

dilute the unqualified uninsured motorist coverage mandated by K.S.A. 40-284 are void and unenforceable as being violative of public policy." *Stewart v. Capps,* 247 Kan. 549, Syl. ¶ 3. Insurance policy provisions, however, may condition, limit, or dilute uninsured motorist coverage as long as such exclusions and limitations fall within the exclusions and limitations expressly allowed by statute.

K.S.A. 40-284(e)(1) provides in pertinent part:

"(e) Any insurer may provide for the exclusion or limitation of coverage:
"(1) When the insured is occupying or struck by an uninsured automobile or trailer owned or provided for the insured's regular use."

Midwestern's policy on the Nova provides in pertinent part:

"A. We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:
"1. Sustained by an **insured** . . . .

. . . .
"B. **Insured** as used in this part means;
"1. You or any **family member**.

. . . .
"C. **Uninsured motor vehicle** means a land motor vehicle or trailer of any type:
"1. To which no bodily injury liability bond or policy applies at the time of the accident.

. . . .
"However, **uninsured motor vehicle** does not include any vehicle or equipment:
"1. Owned by or furnished or available for the regular use of you or any **family member**."

When considering Midwestern's motion for judgment on the pleadings, the district court found Ashley was covered by the uninsured motorist policy and therefore, by implication, the policy's exclusion was broader than that allowed by K.S.A. 40-284(e)(1). If an insurance policy's exclusion is too broad and thus unenforceable, the statutory exclusions provided by K.S.A. 40-284(e) are applied to the policy coverage to replace the unenforceable provisions.

When ruling on the parties' motions for summary judgment, the district court found the legislative intent of K.S.A. 40-284 "was to deal with persons who failed to insure *their own* vehicles." Thus, the court found Ashley was not excluded from coverage.

Relying upon *Central Security Mut. Ins. Co. v. DePinto*, 235 Kan. 331, Syl. ¶ 5, 681 P.2d 15 (1984), the district court went on to determine "regular use" as contemplated in K.S.A. 40-284(e)(1) would likewise be "defined as continuous use; uninterrupted normal use for all purposes; without limitation as to use; and customary use as opposed to occasional or special use." Based upon this definition and the facts of the case, the district court held Ashley did not have regular use of the Chevette.

In order to nullify the district court's interpretation of "regular use" set out in K.S.A. 40-284(e)(1), Midwestern first contends that statute applies only to mandatory coverage which is to the named insured, Stephanie, leaving it free to impose any exclusions it desires on Ashley. This argument is without merit. K.S.A. 40-284(e)(1) governs all *exclusions* from coverage, not just "mandatory coverage."

Next, Midwestern argues that although the State of Kansas has enacted financial responsibility laws requiring every owner to purchase liability insurance for his or her vehicle, the State does not protect owners of vehicles who knowingly violate those laws. Hence, insurance companies are not required to provide uninsured motorist coverage to an owner who chooses to insure one vehicle and not another. See *Farmers Ins. Co. v. Gilbert*, 14 Kan. App. 2d at 404. Because Stephanie chose not to insure the Chevette and therefore can be excluded from coverage, Midwestern claims Ashley, as a family member, can also be properly excluded.

For support Midwestern cites *Petrich by Lee v. Hartford Fire Ins. Co.*, 427 N.W.2d 244 (Minn. 1988). In *Petrich*, the plaintiff's stepfather purchased insurance on two of his three vehicles. The plaintiff was injured while occupying the uninsured vehicle. As an additional insured under his stepfather's policy, plaintiff sought uninsured motorist coverage under his stepfather's policy covering the other two vehicles. The Minnesota Supreme Court found plaintiff was attempting to use his first-party coverage (uninsured motorist coverage) as third-party (liability) coverage. Noting liability insurance and uninsured motorist coverage compensate different risks and the premium is much less for uninsured motorist coverage, the court held the insurer of the other

two vehicles did not owe the plaintiff uninsured motorist coverage. The court also stated:

"Viewed from the perspective of the claimant, it might be argued that it is unfair to an additional insured to be denied uninsured motorist coverage because the named insured fails to insure the vehicle involved in the accident. Members of the policyholder's family might not own a car and hence could not purchase auto insurance of their own to protect themselves against the other policyholder's failure to insure his vehicles. But this complaint should be directed to the car owner who has a responsibility for insuring his cars [pursuant to state law], not to the insurer which must fashion its premium structure to defined risks and can only react to the policyholder's decision to insure or not to insure." 427 N.W.2d at 246.

Prior to the enactment of 40-284(e) in 1981, vehicle owners who had uninsured motorist insurance on one vehicle and not on another were able to collect uninsured motorist benefits when they were injured in their own uninsured vehicle. This allowed vehicle owners to pay for uninsured motorist coverage for only one vehicle but receive benefits when injured in any and all their vehicles. See *Barnett v. Crosby*, 5 Kan. App. 2d 98, 612 P.2d 1250, *rev. denied* 228 Kan. 806 (1980). For example, in *Merritt v. Farmers Ins. Co.*, 7 Kan. App. 2d 705, 647 P.2d 1355 (1982), the plaintiff was involved in a hit-and-run accident while a passenger in an automobile she owned but did not insure. Plaintiff was awarded uninsured motorist benefits as an additional insured under a policy issued to the driver. The court held that even though the legislature probably did not intend to require coverage for persons in plaintiff's position, she was an "insured" under the policy language. 7 Kan. App. 2d at 711.

Following the passage of 40-284(e), the Court of Appeals stated:

"By adopting K.S.A. 40-284(e)(1), the legislature prevented the results reached in cases such as *Barnett* and *Merritt*. It is important to note, however, that the exclusion authorized by the statute is a narrow one. It applies only to *uninsured* vehicles. The legislature's intent in drafting such a narrow exclusion was apparently limited to preventing persons who failed to insure their own vehicles from recovering on the policies of others or on policies of their own issued for other vehicles." *Farmers Ins. Co. v. Gilbert*, 14 Kan. App. 2d at 404.

Midwestern argues the district court, by finding Ashley is not excluded from coverage, is applying pre-1981 law—the law 40-284(e)(1) was created to eliminate. Midwestern further contends

the legislature chose to allow the exclusion to extend to "insureds" and did not limit it to the "named insured." Therefore, Ashley's status as an insured places her in the class sought to be excluded by the legislature as expressed by 40-284(e)(1).

Midwestern also contends Ashley cannot have greater rights under the policy than Stephanie as the named insured. In *Klamm v. Carter*, 11 Kan. App. 2d 574, 730 P.2d 1099 (1986), the plaintiff had insurance on his automobile that included uninsured motorist coverage. He was injured by a negligent, uninsured motorist while plaintiff rode his own uninsured motorcycle. When plaintiff sought uninsured motorist benefits under his automobile policy, the Court of Appeals found the plaintiff was excluded from coverage pursuant to the policy's exclusion clause. Moreover, the appellate court found the exclusion did not exceed the scope of K.S.A. 40-284(e)(1).

It is clear Stephanie cannot claim uninsured motorist benefits and Midwestern intended to exclude Ashley as well. Midwestern points out the general rule is that the rights of the additional insureds can rise no higher than the named insureds. The general rule, however, is subject to statutes and public policy provisions to the contrary. 12 Couch on Insurance 2d § 45:307 (rev. ed. 1981). Thus, the question of whether K.S.A. 40-284(e)(1) or Kansas public policy forbids Ashley's exclusion would remain.

Ball counters Midwestern's arguments by pointing out the narrow construction given K.S.A. 40-284. Moreover, Ashley, an unemancipated minor, may sue Stephanie to recover damages for injuries caused by Stephanie's negligence in the operation of a motor vehicle. See *Nocktonick v. Nocktonick*, 227 Kan. 758, 611 P.2d 135 (1980). Ball also claims that by denying Ashley uninsured motorist benefits because she is a family member, Midwestern is attempting to impose a household exclusion prohibited under Kansas law. For support of the household exclusion prohibition argument, Ball cites *DeWitt v. Young*, 229 Kan. 474, 625 P.2d 478 (1981), in which this court found household and garage shop exclusions, or any other exclusion, to motor vehicle *liability* insurance coverage could not exceed the exclusions allowed by law.

Household exclusions in contravention of statutorily mandated liability insurance were found void because they violated public policy. *DeWitt v. Young*, 229 Kan. at 479. The exclusions and

limitations of K.S.A. 40-284(e) are also expressions of public policy, but in the context of uninsured motorist insurance. We find K.S.A. 40-248(e) does not violate the public policy which caused household exclusions to be void.

Midwestern contends the district court misinterpreted the phrase "provided for the insured's regular use." Midwestern argues that a person can use a vehicle without driving or owning it and that Ashley could use the Chevette by occupying it. In the context of motor vehicle insurance, this court has defined "use" very broadly as including "to occupy." *Alliance Mutual Casualty Co. v. Boston Insurance Co.*, 196 Kan. 323, 327-28, 411 P.2d 616 (1966); *Esfeld Trucking, Inc. v. Metropolitan Insurance Co.* 193 Kan. 7, 10-11, 392 P.2d 107 (1964). In addition, Midwestern claims the fact that Ashley had not ridden in the Chevette often should not influence the outcome of this case. Instead, the pertinent facts should be that the Chevette was owned by a family member and was available for Ashley's regular use.

Ball argues that in order to exclude Ashley from coverage she must be the owner of the Chevette. Moreover, he contends Midwestern's claim that the vehicle merely had to be "available" for her use impermissibly broadens the language of K.S.A. 40-284(e)(1).

We hold K.S.A. 40-284(e)(1) authorizes the exclusions enumerated in Midwestern's policy with regard to uninsured motorist coverage. The question then presented is whether Ashley Ball falls within the exclusion. Much is made of whether the Chevette was furnished or available for the regular use of any family member. Obviously it was, as is illustrated by Ashley and her mother using it on the date of the accident. It was owned by Joseph and Stephanie Ball for family use when needed. Whether or not it was used regularly is immaterial; it was available for regular use. Any attempt to distinguish the statutory word "provided" from the insurance policy terms "furnished or available" is futile. The terms mean the same thing.

We are compelled by the clear, unambiguous language of the statute and the insurance policy to conclude that Ashley Ball is excluded from uninsured motorist coverage under the insurance policy on the Nova. To hold otherwise would not only violate

the clear meaning of the statute but also, as a matter of public policy, encourage the public to insure only one vehicle.

The judgment of the district court is reversed, and judgment is entered for Midwestern Insurance Company.

ABBOTT, J., not participating.

■ PAUL E. MILLER, district judge, assigned.