(104 P.3d 1011)
No. 91,634

THOMAS BARLETT, d/b/a MAJIC POOLS, *Appellee*, v. CNA and TRANSPORTATION INSURANCE CO., *Appellants*.

Opinion filed January 28, 2005.

*Robert J. Luder* and *Steven J. Book*, of McCormick, Adam & Long, P.A., of Overland Park, for appellants.

*Luke A. Sobba* and *Richard F. Hayse*, of Morris, Laing, Evans, Brock & Kennedy, Chtd., of Topeka, for appellee.

Before JOHNSON, P.J., PIERRON and GREEN, JJ.

JOHNSON, J.: Transportation Insurance Company (Transportation) appeals the summary judgment granted to Thomas Barlett in his action to recover underinsured motorist (UIM) coverage under his automobile policy with Transportation. Finding that judgment in the full amount of Transportation's UIM limits was erroneous, we reverse and remand.

Barlett was the sole proprietor of a business, operating under the name of Majic Pools. On January 1, 1997, Barlett drove his motorcycle to a service call for a Majic Pools customer; enroute,

an automobile driven by Amanpreet Singh collided with the motorcycle. Barlett sustained substantial injuries.

Singh had bodily injury liability insurance coverage with a per person limit of $25,000. Barlett had three insurance policies that contained UIM coverage. The motorcycle Barlett was operating was insured with Progressive Casualty Insurance Company which provided a $25,000 limit. Barlett owned a 1992 Chrysler which was insured with an American Family Insurance policy providing a $100,000 UIM limit. Two other vehicles were covered by a business auto coverage form issued to Majic Pools, which provided UIM limits of $300,000. The business auto policy has "CNA" in the heading but recites that coverage is provided by Transportation. Because CNA was dismissed from this lawsuit, we will refer to the business auto insurer as Transportation.

Barlett reported the accident to Transportation the following day, January 2, 1997. Barlett filed suit against Singh and, in January 1999, notified Transportation of its lawsuit. Later, Barlett specifically notified Transportation of the possibility of a UIM claim on the business auto policy and even invited Transportation to participate in a settlement conference. Transportation denied coverage and declined to participate in the action between Barlett and Singh. Eventually, pursuant to a settlement between Barlett and Singh, the district court entered a journal entry of judgment in which the court found that Singh was the sole cause of the accident and that Barlett had sustained damages in the amount of $945,300.72.

Barlett then sued CNA to collect the full $300,000 of UIM coverage on the business auto policy. Subsequently, Transportation was added as a defendant and CNA was dismissed from the lawsuit. Both parties filed motions for summary judgment. Ultimately, the district court granted summary judgment to Barlett against Transportation for $300,000. On appeal, Transportation claims that the district court was wrong to hold the UIM carrier bound by the consent judgment previously entered in the action between the insured and the tortfeasor. Further, Transportation contends that the district court erroneously precluded Transportation's enforcement of applicable policy provisions based upon its failure to intervene in the underlying negligence lawsuit. Transportation ar-

gues that its insurance policy provisions requiring an insured to notify the insurer of an accident, the provisions defining underinsured coverage, and the provisions relating to other insurance coverage would have reduced or eliminated the amount Transportation was required to pay Barlett.

To the extent Transportation challenges the appropriateness of summary judgment, we determine whether there is no genuine issue as to any material fact and whether Barlett is entitled to judgment as a matter of law. See *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002). To the extent we must construe the insurance contract and construe statutory provisions, our review is unlimited. See *Loucks v. Farm Bureau Mut. Ins. Co.*, 33 Kan. App. 2d 288, 101 P.3d 1271 (2004).

## *UNDERLYING JUDGMENT*

Transportation first argues that Barlett should have to prove the reasonableness of the underlying settlement with Singh in order to prevail on his UIM claim. The overarching theme of Transportation's arguments is that, because the settlement terms relieved Singh of any personal responsibility for the judgment, he had no incentive to oppose the amount of damages proffered by Barlett. Therefore, Transportation believes it should have an opportunity to challenge whether Barlett actually sustained $945,300.72 in damages. Transportation does not explain why it is concerned with any damages above its $300,000 UIM limit.

In its brief, Transportation acknowledges that K.S.A. 40-284 provides a means for UIM carriers to protect against collusive settlements. K.S.A. 40-284(f) provides:

"An underinsured motorist coverage insurer shall have subrogation rights under the provisions of K.S.A. 40-287 and amendments thereto. If a tentative agreement to settle for liability limits has been reached with an underinsured tortfeasor, written notice must be given by certified mail to the underinsured motorist coverage insurer by its insured. Such written notice shall include written documentation of pecuniary losses incurred, including copies of all medical bills and written authorization or a court order to obtain reports from all employers and medical providers. Within 60 days of receipt of this written notice, the underinsured motorist coverage insurer may substitute its payment to the insured for the tentative settlement amount. The underinsured motorist coverage insurer is then subro-

gated to the insured's right of recovery to the extent of such payment and any settlement under the underinsured motorist coverage. If the underinsured motorist coverage insurer fails to pay the insured the amount of the tentative tort settlement within 60 days, the underinsured motorist coverage insurer has no right of subrogation for any amount paid under the underinsured motorist coverage."

Barlett gave Transportation more than adequate notice of the proposed settlement with Singh. An April 24, 2001, transmittal by certified mail contained a copy of the formal settlement offer and a court order authorizing the release of Barlett's medical and employment records. On November 6, 2001, Barlett offered to settle for the UIM limits unless defendants substituted payment, allowing the insurer 60 days to advise as to its intentions. The settlement judgment was entered March 7, 2002. Transportation apparently opted to simply ignore the correspondence, thereby forfeiting its subrogation rights under K.S.A. 40-287. That provision allows a UIM provider to have a cause of action "against any other person or organization legally responsible for the bodily injury or death" of its insured. In this instance, Transportation would have been subrogated to the action against Singh.

Transportation also acknowledges that our Supreme Court has held that a UIM insurer which has been notified of its insured's action against the tortfeasor and thereafter elects not to intervene is bound by a judgment "based on a proper settlement agreement between the parties to the action and approved by the court." *Guillan v. Watts*, 249 Kan. 606, 617, 822 P.2d 582 (1991). However, Transportation argues that the term "proper settlement agreement" has not been specifically defined as it relates to the UIM statute, and, therefore, a UIM insurer should be permitted to relitigate the propriety of the settlement agreement. We disagree.

The *Guillan* holding was based upon "[t]he Kansas public policy, that all issues in a lawsuit should be tried in one trial." 249 Kan. at 616. The case provides straightforward instructions to a UIM insurer. It can intervene in its insured's negligence action, require the insured to prove the tortfeasor's liability and the insured's damages, and preclude the tortfeasor from confessing judgment. On the other hand, the UIM insurer that fails to intervene in the neg-

ligence action is unequivocally bound by a court-approved settlement judgment's determination of liability and damages.

This case illustrates the fairness of the intervene-or-be-bound rule. Barlett notified his insurance company of the accident, advised his insurer that he had a potential underinsured motorist coverage claim, notified the insurer of the damages he claimed to have suffered, and provided Transportation with a court order allowing the insurer access to Barlett's medical and employment records. Transportation had an opportunity to investigate the accident and make an independent assessment of Singh's liability and Barlett's damages. If Transportation had either verified the legitimacy of Barlett's damages or intervened in the negligence action to challenge the damages, that issue could have been resolved without unnecessary delay and expense to the insured. Transportation's complaint, at this late date, that Barlett failed to prove his damages is particularly unavailing, given Transportation's failure to be proactive at the outset. The district court's ruling that Transportation was bound by the settlement judgment is affirmed.

## INSURANCE POLICY PROVISIONS

One of the district court's findings was that, "by not intervening in the action against the tortfeasor, the Defendant is now precluded from raising or has waived its affirmative defenses of apportionment, if any, under its 'Other Insurance' provisions of its contract." Transportation argues that intervention was unnecessary for it to enforce the terms of its insurance policy. We agree.

The district court indicated that it could find no Kansas authority dealing with coverage questions where the insurer had not intervened in the insured's suit against the tortfeasor. The court then suggested that a district court could bifurcate the liability and damages issues from the coverage questions in the negligence lawsuit. In that regard, *Ramsey v. Chism,* 249 Kan. 299, 817 P.2d 198 (1991), is instructive.

In that case, the Ramseys attempted to join their UIM insurer as a defendant in their action against the tortfeasor. They argued that it was unfair to make them sue the tortfeasor and then bring a separate action to decide coverage questions. Plaintiffs suggested

the district court could decide the coverage questions outside the presence of the jury, *i.e.* bifurcate the negligence and contract questions. Our Supreme Court rejected the Ramseys' arguments and held that a UIM insured cannot force the UIM carrier to be a party in the negligence action against the tortfeasor. The court recognized that its holding could result in the insured having to pursue two lawsuits: a third-party liability action against the tortfeasor and a first-party contract action against the UIM insurer.

The requirement that a UIM insurer resolve its concerns about liability and damages in the negligence action makes sense. Those issues are already being litigated between the insured and tortfeasor; a relitigation of the same issues in a separate contract action wastes judicial resources. However, the judicial economy rationale loses steam when applied to the first-party contract questions. The tortfeasor has no interest in the insurance policy dispute and injecting those issues into the negligence lawsuit complicates matters. Indeed, the district court acknowledged that a consolidated trial would require a bifurcation, *i.e.*, two separate trials rolled into one action.

The dissent suggests that we should require the UIM carrier to intervene in the negligence action, join contingently liable UIM carriers, and cross-claim against the other carriers to resolve all coverage questions. That plan ignores *Ramsey's* holding that a UIM insurer cannot be forced into the negligence action. How does an intervening insurer cross-claim against another UIM carrier that cannot be forced to participate in the negligence action?

The dissent also suggests that Transportation lost its right to enforce its policy provisions when it lost its right of subrogation. First, the subrogation granted to a UIM insurer in K.S.A. 40-287 is plainly against the tortfeasor, *i.e.*, the "person or organization legally responsible for the bodily injury or death" of the insured. The provision does not effect an assignment of the insured's contract rights in other insurance policies with other companies. More to the point, Transportation was not pursuing contribution from another insurance company, but rather it was applying its contract provisions vis-a-vis its own insured. An insurer does not acquire

the right to enforce its contract with its own insured via subrogation.

In short, by electing to forego participation in the third-party liability action, Transportation did not relinquish its right to enforce the contract it made with Barlett. However, our finding that Transportation was permitted to assert its insurance policy provisions does not end our discussion. Some of Transportation's coverage arguments fail as a matter of law.

### Notice

Transportation asserted that Barlett breached the policy provision requiring an insured to give the company prompt notice of a claim. Transportation argues that Barlett's accident notice was insufficient to notify Transportation that Barlett was making an underinsured motorist coverage claim. The argument is unsupported by law, contract language, or common sense.

The contract provides that an insured "must give us or our authorized representative prompt notice of the 'accident' or 'loss' " and directs the insured to include: (1) how, when, and where the accident or loss occurred; (2) the name and address of the insured; and (3) the names and addresses of any injured persons and witnesses, to the extent possible. The notice provisions of the policy do not require the insured to identify for his or her company the coverage provision which will be applicable to the claim.

One would expect the insurance company, which drafted the insurance policy, to have a greater knowledge of the applicability of the various coverages contained in the policy than a person who purchases the policy. To suggest that the insured has to identify the precise coverage that will apply to an accident is totally unpersuasive. Upon being notified of an accident, it is incumbent on the insurance company to investigate the applicability of its insurance policy provisions. Transportation's contentions to the contrary fail as a matter of law.

### Right to reject UIM coverage

Transportation's policy provided that uninsured motorist (UM) coverage applied to "[o]nly those 'autos' you own that because of

the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage." Transportation points out that K.S.A. 40-284(c) allows a named insured to reject uninsured motorist coverage in excess of the minimum bodily injury liability limits required by K.S.A. 40-3107. Therefore, Transportation argues that because Barlett *could* have rejected UM coverage, even though he did not do so, the policy did not provide any UIM coverage, or, in the alternative, only provided the required minimum limits. We reject this creative, but unavailing, argument.

The declarations page of Barlett's policy states that the insurer is providing uninsured motorist coverage with a limit of $300,000 for which a specific premium is charged. The insurer is bound by that declaration. Further, " '[i]nsurance policy provisions which purport to condition, limit, or dilute the unqualified uninsured motorist coverage mandated by K.S.A. 40-284 are void and unenforceable as being violative of public policy.' " *Ball v. Midwestern Ins. Co.*, 250 Kan. 738, 740-41, 829 P.2d 897 (1992) (quoting *Stewart v. Capps*, 247 Kan. 549, Syl. ¶ 3, 802 P.3d 1226 [1990]); see *Tyler v. Employers Mut. Cas. Co.*, 274 Kan. 227, 238, 49 P.3d 511 (2002). As a matter of law, Transportation was providing Barlett with UIM coverage with a limit of liability of $300,000, and summary judgment on that issue was appropriate.

*Other insurance*

The district court acknowledged that the stacking of UIM coverage from separate policies for the same accident is prohibited by K.S.A. 40-284(d), which provides:

"Coverage under the policy shall be limited to the extent that the total limits available cannot exceed the highest limits of any single applicable policy, regardless of the number of policies involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid or vehicles involved in an accident."

However, the district court determined that, although Barlett could only recover a maximum of $300,000, he was permitted to choose to collect that whole amount from the policy containing the highest limit. The court relied on *Farmers Ins. Co. v. Gilbert*, 14

Kan. App. 2d 395, 403, 791 P.2d 742, *aff'd as modified* 247 Kan. 589, 802 P.2d 556 (1990). However, in *Gilbert*, both vehicles were insured by the same company and the particular policy provision being construed referred to other applicable insurance issued by the Farmers Insurance Group of Companies. Here, we are confronted with separate policies from separate insurance companies, *i.e.*, the money will not be coming out of the same pocket. Thus, the *Gilbert* holding is not binding on our interpretation of Barlett's insurance policies.

Transportation's insurance policy contained a provision that stated:

"When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis."

The district court opined that the policy should be liberally construed in Barlett's favor because a plaintiff should not "bear the burden of suing all applicable carriers in order to achieve indemnification for his loss." That rationale is unpersuasive. As noted above, Barlett chose to insure his various vehicles through different insurance companies. Further, he chose and paid for lower limits on the vehicles insured with Progressive and American Family. He was operating a vehicle that was not specifically listed on the Transportation policy. Having voluntarily opted for separate insurance contracts with separate companies, Barlett should be required to enforce his contract rights individually against each carrier. That being said, Transportation should have been permitted to apply its other insurance provision to reduce the amount of its payment to its pro rata share of the UIM claim.

## PRORATION

In the district court, Transportation argued that its $300,000 limit should be reduced by Progressive's $25,000 limit and American Family's $100,000 limit, leaving $175,000 due from Transportation. The district court stated: "Another way to consider this clause could be to assume the 'total of the limits of all coverage forms' is $425,000.00, Defendant's share would be 70% or

$210,000.00." Then, the district court ruled that Transportation's other insurance clause was unenforceable because it was "ambiguous as to how the proportional share is to be computed." Both calculations were incorrect but not because the terms of the provision were ambiguous. The inaccuracies were due to a failure to apply all of the contract language.

In Transportation's first proposal, it subtracted the full limits of the Progressive and American Family policies to arrive at its share of the $300,000 maximum recovery. The policy specifies that Transportation's "share is the *proportion* that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis." (Emphasis added.) Transportation simply did not *prorate* responsibility as its policy instructed.

The district court erroneously included the $25,000 limits of the Progressive policy in arriving at its total limits of $425,000. The Progressive policy does not provide underinsured coverage on this loss because Singh's liability limit was the same as Progressive's limits. See *State Farm Mut. Auto. Ins. Co. v. Cummings*, 13 Kan. App. 2d 630, 639, 778 P.2d 370, *rev. denied* 245 Kan. 786 (1989) (opposing party's liability coverage must be below claimant's liability coverage). In cases where the UIM coverage equals the tortfeasor's bodily injury liability limits, " 'there is no UIM coverage.' " *O'Donoghue v. Farm Bureau Mut. Ins. Co.*, 275 Kan. 430, 434, 66 P.3d 822 (2003). Therefore, the total limits of all "policies covering on the same basis" did not include the Progressive limits because that policy did not cover Barlett's UIM claim. At best, only American Family's limits should have been added to Transportation's limits.

On appeal, Transportation has changed gears and now argues that its share should have been $211,765. That figure is derived by adding all three companies' limits ($425,000) and dividing Transportation's limit of $300,000 by $425,000 to get Transportation's pro rata share of the total limits. That fraction is then multiplied by the maximum recovery of $300,000 to arrive at Transportation's policy payment. This calculation likewise erroneously includes Progressive's limits in the total of limits applicable to this UIM claim.

The plain language of Transportation's other insurance provision says that when there are other policies that cover a loss, Transportation will only pay its share of the loss. That share is determined by adding up the limits of liability of all policies that cover the loss and dividing that sum into Transportation's limit to yield its fractional share of the loss. Transportation initially ignored the proportional language of the policy. Both Transportation and the district court failed to recognize that Progressive's policy did not provide UIM coverage for Barlett's loss. An obvious misapplication of plain contract language does not render the contract ambiguous. Neither does a mistake of fact or misunderstanding of the law. The district court erred in finding Transportation's other insurance provision unenforceable because of ambiguity.

In addition, all of the calculations failed to take into account the tortfeasor's bodily injury liability coverage payment of $25,000. K.S.A. 40-284(b) directs that the UIM coverage is to enable the insured "to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage." In other words, Barlett was entitled to collect what he could have gotten if Singh had carried $300,000 limits, which would have been a total of $300,000 from all sources. Recently, in analyzing UIM benefits where the damages recovered from the tortfeasor were less than actual damages because of multiple claims against the tortfeasor's liability insurance limits, the Supreme Court stated that "the underinsured motorist provider is responsible for paying the difference between the insured's pro rata share of the settlement with the tortfeasor and the insured's total amount of damages up to the insured's underinsured motorist limits." *O'Donoghue*, 275 Kan. 430, Syl. ¶ 6. Applying that holding by analogy, if Transportation was the only UIM carrier, it would be responsible for paying the difference between Barlett's settlement with Singh's insurance carrier ($25,000) and Barlett's underinsured motorist limits ($300,000), or $275,000.

Thus, adding the UIM limits on the policies issued by Transportation and American Family yields $400,000, of which Trans-

portation is responsible for $300,000, *i.e.*, a ¾ pro rata share. The net UIM claim is $275,000; Transportation's pro rata share is $206,250.

The foregoing calculation presumes that the American Family policy provided UIM coverage that was applicable to Barlett's accident. The record does not establish that to be an undisputed fact. Transportation would have the burden to prove the applicability of the American Family UIM coverage to invoke its policy provision on other insurance. Therefore, summary judgment was inappropriate on the issue of prorating Transportation's UIM coverage. On this issue, we reverse and remand for a determination of whether American Family's UIM coverage was applicable to this accident and for a re-calculation of Transportation's share of the loss.

Reversed and remanded.

GREEN, J., concurring and dissenting: I concur with the majority's decision that Barlett's award should be modified to $275,000 and that Transportation is bound by the settlement agreement between Barlett and Singh, the underinsured tortfeasor. But I dissent from the majority's decision mandating proration between the policies of Transportation and American Family.

*Ambiguity*

The trial court determined that the pro rata clause under the "other insurance" clause was ambiguous. Transportation's pro rata clause reads as follows:

"When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis."

In determining that the pro rata clause was ambiguous, the trial court stated:

"Defendant computes their proportional share to be as follows: $300,000.00 total available less $25,000.00 of Progressive Insurance, $100,000.00 of American Family leaving $175,000.00 to be paid by the Defendant.

"Another way to consider this clause could be to assume the 'total of the limits of all coverage forms' is \$425,000.00, Defendant's share would be 70% or \$210,000.00.

"This clause may be considered to be unenforceable because, on its face, it is ambiguous as to how the proportional share is to be computed."

I acknowledge that Transportation's insurance policy is susceptible to these different interpretations and, therefore, ambiguous. Nevertheless, this ambiguity does not necessarily mean that the pro rata clause would fail. Quoting *Brumley v. Lee*, 265 Kan. 810, 812-13, 963 P.2d 1224 (1998), our Supreme Court in *Narron v. Cincinnati Ins. Co.*, 278 Kan. 365, 369, 97 P.3d 1042 (2004), stated: " 'If the language [in an insurance policy] is ambiguous, the construction most favorable to the insured must prevail.' "

The problem that I see with Transportation's pro rata clause is that it can apply to insurance that is not "valid and collectible." Thus, Transportation's pro rata clause can be used to dilute its underinsured motorist coverage in contravention of statutory and case law in Kansas.

As discussed by the trial court, under Transportation's pro rata clause, Progressive's policy limits of \$25,000 may be used to limit Transportation's liability. For example, Transportation maintains in its brief that the total from all policies should be \$425,000:

Transportation—\$300,000;

American Family—\$100,000; and

Progressive—\$25,000.

Under Transportation's pro rata clause, assuming that Barlett's tort settlement figure is \$300,000, Transportation's policy would cover 70.58823 percent of the loss, or \$211,765; Progressive's policy would cover 5.88235 percent of the loss, or \$17,647; and American Family's policy would cover 23.52941 percent of the loss, or \$70,588.

Here, under Transportation's policy, Barlett receives coverage for only a fraction of the insurance coverage he purchased. "Insurers may not use unclear policy clauses to defeat the coverage reasonably expected by the insured." *Western Casualty & Surety Co. v. Trinity Universal Ins. Co.*, 13 Kan. App. 2d 133, 139, 764 P.2d 1256 (1988), *aff'd* 245 Kan. 44, 775 P.2d 176 (1989). An in-

sured is entitled to no less than the total of the coverage purchased or bargained for. As a result, an insurer should not be allowed to use its pro rata clause to convert its liability into only partial coverage. Nevertheless, Transportation's pro rata clause does just that.

Transportation's pro rata clause establishes a negative limitation of underinsured motorist coverage. This is because Transportation failed to limit its pro rata clause to "valid and collectible insurance." See *Western Casualty & Surety Co.,* 13 Kan. App. 2d at 136. ("Pro rata clauses provide that the insurer will pay a prorated share of a loss, usually in the proportion the policy limits bear to the total limits of all valid and collectible insurance."). Here, Transportation's pro rata clause does not refer to "valid and collectible insurance." As a result, Transportation's pro rata clause applies whether the other insurance is valid and collectible or not.

Transportation's pro rata clause must fail under statutory and case law in Kansas. Under K.S.A. 40-284, an insured's coverage must be no less than if the insured had been protected by only one policy. The pro rata clause is not among the six permissible exclusions or limitations of coverage under K.S.A. 40-284(e). Moreover, in *Tyler v. Employers Mut. Cas. Co.,* 274 Kan. 227, 233, 49 P.3d 511 (2002), our Supreme Court stated: "Insurance policy provisions which purport to condition, limit, or dilute the broad, unqualified uninsured motorist coverage mandated by K.S.A. 40-284 are void and unenforceable." Accord *Ball v. Midwestern Ins. Co.,* 250 Kan. 738, 740-41, 829 P.2d 897 (1992); *Stewart v. Capps,* 247 Kan. 549, Syl. ¶ 3, 802 P.2d 1226 (1990). Because Transportation's pro rata clause does not apply to only valid and collectible insurance, it seeks to dilute its uninsured motorist coverage. As a result, the pro rata clause is unenforceable.

Although the majority's opinion prohibits Transportation from prorating its policy with Progressive's policy, this is improper. To disallow proration between the two policies, the majority would have to read the phrase "valid and collectible insurance" into Transportation's policy. A court "may not rewrite a contract or make a new contract for the parties under the guise of construction. [Citation omitted.] Words cannot be written into a contract which import an intent wholly unexpressed when it was executed. [Cita-

tion omitted.]" *Quenzer v. Quenzer*, 225 Kan. 83, 85, 587 P.2d 880 (1978).

## Judicial Economy

One of the reasons that the trial court gave for not enforcing Transportation's pro rata clause was because of judicial economy. The trial court pointed out that these coverage issues could have been resolved if Transportation had intervened in the Barlett-Singh action, "joined other contingently liable carriers, or sought a cross claim for contributions." I agree. Nevertheless, as the majority correctly points out, *Ramsey v. Chism*, 249 Kan. 299, 817 P.2d 198 (1991), would preclude the joining of an underinsured motorist insurer as a party in an action against an underinsured tortfeasor. To prevent the possibility of a third lawsuit, however, Transportation should have impleaded American Family in the current action. See *Guillan v. Watts*, 249 Kan. 606, 616, 822 P.2d 582 (1991) ("As a general rule, multiple litigation is never desirable, and there is a public interest economically in avoiding it whenever possible."). Moreover, the burden to implead American Family should be placed on Transportation.

Authority for this position is found in the case of *Wilks v. Allstate Insurance Company*, 195 So. 2d 390, 399 (La. App. 1967). In determining that before an insurer can apply its other insurance provisions, the validity and collectibility of the other insurance must be determined in an action where the alleged other insurer is a party, the Louisiana Court of Appeals stated:

"If this other alleged insurer is not impleaded in the suit, any holding that this other insurance is 'valid and collectible' is not binding upon the other company in different proceedings by the insured against such other company to enforce such other alleged coverage. Thus a defendant insurer's protection of its insured might be reduced to below policy limits in present litigation, but the insured nevertheless denied recovery against the other insured in subsequent litigation. To effectuate the policy intention we believe that ordinarily the other insurance cannot be regarded as 'valid and collectible' so as to reduce an insurer's liability below policy limits, unless the validity and collectibility of the other insurance is determined by proceedings to which the alleged other insurer is a party." 195 So. 2d at 399.

Further, finding that the burden of proving the validity or collectibility of any other insurance should be borne by the insurer which seeks to reduce its obligations under its pro rata clause, the *Wilks* court stated:

"If we adopt Allstate's present contention, then where other insurance is potentially available, even under farfetched circumstances such as the present . . . , the insured would be required to retain counsel independent of his insurer's in order to implead the alleged other insurer or else to prove the invalidity or uncollectibility of such coverage. Within the contemplation of the parties and of the purpose of the insurance contract, this burden should instead be on the insurer, which can more readily and efficiently investigate the potential liability of the other insurer and, if so indicated, implead it as a party to the litigation." 195 So. 2d at 399.

As Barlett's insurer, Transportation was in a better position to investigate and to determine the potential liability of other underinsured motorist insurers. Once Transportation had determined that Barlett had other valid and collectible insurance, it was Transportation's responsibility to implead the other insurer as a party to this litigation. In reversing and remanding this case, the majority instructs the trial court to determine "whether American Family's UIM coverage was applicable to this accident" and to recalculate "Transportation's share of the loss." Without American Family as a party to this action, however, the trial court cannot adequately determine whether American Family's underinsured motorist coverage was "valid and collectible" in order to reduce Transportation's liability under its policy. See *Wilks*, 195 So. 2d at 399. Because Transportation failed to implead American Family as a party to this action, Transportation should be precluded from enforcing its pro rata clause.

Finally, it is important to point out that Barlett no longer possesses a valid and collectible claim against Progressive. The *Wilks* court recognized the potential claim against the other insurer was tenuous. In acknowledging that the claim against the other insurer was doubtful, the court stated: "[R]ecovery against it [Employers] is far from assured, if indeed possible at all." 195 So. 2d at 399. The same problem exists in this case. Barlett previously settled with and released American Family from further liability for a payment

of $5,000. As a result, Transportation is the only underinsured motorist insurer still liable for coverage.

## Subrogation

In determining that Transportation had waived the right to enforce its pro rata clause, the trial court stated:

"Defendant, at the time of Plaintiff's case against the tort feasor had an opportunity to join contingently necessary parties under its other insurance provisions to resolve in one suit its affirmative defenses to coverage. . . .

"This Court has been unable to find Kansas authority which deals with the coverage questions, after suit against the tort feasor, where the carrier failed to intervene. A strong argument exists that in the interest of judicial economy, the carrier here, if it anticipated coverage issues could have intervened, joined other contingently liable carriers, or sought a cross claim for contributions. If necessary, the trial court could have bifurcated the case to decide the issues of liability and damages against the tort feasor, and then the Court would have had jurisdiction to apportion the judgment against existing carriers if the authority existed.

"Therefore, this Court finds that by not intervening in the action against the tort feasor, the Defendant is now precluded from raising or has waived its affirmative defenses of apportionment, if any, under its 'Other Insurance' provisions of its contract."

The trial court determined that because Transportation had failed to intervene in Barlett's suit against Singh, Transportation lost the right to enforce its pro rata clause.

K.S.A. 40-284(f) states:

"If the underinsured motorist coverage insurer fails to pay the insured the amount of the tentative tort settlement within 60 days, the underinsured motorist coverage *insurer has no right of subrogation for any amount paid under the underinsured motorist coverage.*" (Emphasis added.)

Subrogation is the substitution of one person to the rights of another. Because Barlett is an insured under both Transportation's and American Family's policies, Transportation and American Family received the right to enforce their pro rata clauses. As a result, Transportation's right to enforce its pro rata clause is directly derived from Barlett's right as an insured under concurring insurers.

Barlett's judgment against Singh established his legal entitlement to underinsured motorist coverage and determined the

amount he was entitled to recover. See *Pickens v. Allstate Ins. Co.,* 17 Kan. App. 2d 670, 674, 843 P.2d 273 (1992). Because Transportation has lost its subrogation rights to any underinsured motorist coverage, it no longer has the right to seek enforcement of its pro rata clause.

In *Cabral v. State Compensation Ins. Fund,* 13 Cal. App. 3d 508, 511, 91 Cal. Rptr. 778 (1970), the court stated:

"[W]here there is 'other insurance' covering the same liability as the basic or comprehensive policy, the defense by one insurer inures to the benefit of the nondefending carrier. Thus the equitable principle of *subrogation* entitles the defending carrier to contribution from the carrier that refused to defend." (Emphasis added.)

The reverse should also be true. If an insurer loses its right of subrogation, it should be denied the right to contribution. Because Transportation failed to intervene in Barlett's suit against Singh, Transportation lost its subrogation rights to any settlement that Barlett had to underinsured motorist coverage. Consequently, Transportation should be barred from seeking enforcement of its pro rata clause.

As a result, I would affirm the trial court's decision not to enforce Transportation's pro rata clause.