FILED
United States Court of Appeals
Tenth Circuit

March 31, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

ALLSTATE INSURANCE COMPANY,

       Plaintiff - Appellee,

v.

ELIZABETH MOSER,

       Defendant - Appellant.

No. 09-1052

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 07-CV-00145-RPM)**

_____

Timms R. Fowler, The Fowler Law Firm, LLC, Fort Collins, Colorado (Alan D. Carlson, Carlson Swanson & Dumler, P.C., Fort Collins, Colorado, with him on the briefs), for Defendant-Appellant.

Wendelyn K. Walberg, Walberg, Tucker & Holmes, P.C., Centennial, Colorado, for Plaintiff-Appellee.

_____

Before **MURPHY**, **HOLMES**, Circuit Judges, and **POLLAK**[*], District Judge.

_____

**POLLAK,** District Judge.

_____

_____

[*]     Louis H. Pollak, United States Senior District Judge for the Eastern District of Pennsylvania, sitting by designation.

This diversity declaratory judgment action, brought in the United States District Court for the District of Colorado, presents questions as to the applicability of a Colorado automobile insurance policy's "household exclusion" provision–a provision barring recovery by one household member against another household member–to an accident in Kansas, whose Kansas Automobile Insurance Reparations Act ("KAIRA") stipulated that an automobile liability insurance policy could not limit recovery for bodily injury to one person for less than $25,000. On summary judgment, the District Court (1) rejected the insured's contention that the household exclusion provision was void in its entirety, (2) determined that Allstate's potential liability under the automobile policy was limited to $25,000, and (3) concluded that under these circumstances the umbrella policy was without application. We will affirm.

## I. Background

On December 27, 2004, Elizabeth Moser was a passenger in an automobile driven by her brother, Rudolph Moser. A one-vehicle accident ensued. Elizabeth brought suit against Rudolph in a Colorado state court for the substantial injuries she sustained. Allstate countered by bringing this declaratory action. The automobile in question was registered in Colorado and was covered by an Allstate automobile liability policy with a liability limit of $100,000 per person issued to Linda Carpenter, Elizabeth and Rudolph's mother, and to Linda's husband, Edward Carpenter. The Carpenters also had a personal umbrella policy whose liability ran from $100,000 to $1,000,000. The automobile

liability policy covered bodily injuries sustained by an "insured person."[1] The Carpenters and Elizabeth and Rudolph Moser lived in Fort Collins, Colorado.

The policy's household exclusion policy stated that "Allstate will not pay for any damages an insured person is legally obligated to pay because of: . . . bodily injury to any person related to an insured person by blood, marriage, or adoption and residing in that person's household." The policy also provided that, when the insured vehicle was operated outside of Colorado, Allstate would comply with regulations in those states. The umbrella policy, which provided coverage up to $1,000,000, would be triggered only when the coverage provided by an underlying policy was exhausted–in this case, the umbrella policy stated that its liability for automobile-related injuries began at $100,000.

Because the Moser accident occurred in Kansas, the Kansas Automobile Injury Reparations Act ("KAIRA") applied. KAIRA requires motor vehicles used in the state of Kansas to carry specific minimum insurance. K.S.A. § 40-3103. The statute provides that: "A motor vehicle owned by a nonresident shall not be operated in this state upon a highway or upon property open to use by the public, unless a motor vehicle liability insurance policy meeting the requirements of K.S.A. 40- 3107, and amendments thereto, is in effect for such vehicle." K.S.A. § 40-3106(a). Section 40- 3107 provides that:

---

[1] An "insured person" is defined as the policy holder, "any resident," or "any other person using it with [the policy holder's] permission." "Resident" is further defined as "a person who physically resides in your household with the intention to continue residence there."

> Every policy of motor vehicle liability insurance issued by an insurer to an
> owner residing in this state shall: . . . contain stated limits of liability,
> exclusive of interest and costs, with respect to each vehicle for which
> coverage is granted, not less than $25,000 because of bodily injury to, or
> death of, one person in any one accident and, subject to the limit for one
> person, to a limit of not less than $50,000 because of bodily injury to, or
> death of, two or more persons in any one accident, and to a limit of not less
> than $10,000 because of harm to or destruction of property of others in any
> one accident . . .

K.S.A. § 40-3107(e).

On January 19, 2007, Allstate filed a complaint pursuant to Fed. R. Civ. P. 57 in the District Court for Colorado seeking a declaratory judgment of its rights and obligations with respect to the Moser accident. On March 23, 2007, Moser filed a motion to dismiss pursuant to Fed. R. Civ. R. 12(b)(6). The district court denied that motion on May 2, 2007. Subsequently, the district court granted summary judgment in favor of plaintiff Allstate; the district court determined that Allstate's liability was limited to $25,000.

## II. Analysis

We review the district court's grant of summary judgment *de novo*. *Pitman v. Blue Cross and Blue Shield of Oklahoma*, 217 F.3d 1291, 1295 (10th Cir. 2000). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (citing Fed.R.Civ.P. 56(c)).

In 1974 Allstate filed a "Certification" confirming that it would construe its automobile liability insurance policies issued to non-residents of Kansas "to satisfy the requirements of Section 6(b) of KAIRA and to provide for the payment of first-party benefits required [by the same section.]" when out-of-state cars were operated in Kansas. In accordance with this certification, the Moser policy issued to Linda and Edward Carpenter contained the following language

> The limits of Allstate's liability under Bodily Injury Liability . . . will be automatically increased, if necessary, to comply with the limits required by the applicable motor vehicle financial responsibility law. This provision applies if the insured person is using an insured auto in another state or province with higher limit requirements. The limits of Allstate's liability and the types of coverage under this policy are automatically expanded, if necessary, to meet the requirements of any applicable compulsory insurance or similar law. This expansion of coverage applies only to the extent nonresidents are required to meet such requirements and only when the nonresident uses an insured auto in that state or province.

At this point in the litigation, the parties do not dispute that KAIRA applies and that Allstate is required to pay at least $25,000 under the insurance contract.

The only dispute relates to the application of the household exclusion contained in the contract to bar recovery *in excess* of $25,000. Moser argues that, under KAIRA, household exclusions are invalid, and hence that Allstate's potential liability is the $100,000 ceiling specified in the policy. The language of the statute does not contain a provision reciting that household exclusion. However, Moser contends that the Kansas legislature has implicitly invalidated the use of household exclusions. Prior to 1981, KAIRA did not contain any provisions either permitting or prohibiting household

-5-

exclusions. *Hilyard v. Estate of Clearwater*, 729 P.2d 1195, 1197 (Kan. 1986) (chronicling history of household exclusions in Kansas). Then, in 1981, the Kansas Supreme Court in *DeWitt v. Young*, 625 P.2d 478, 483 (Kan. 1981), confirmed that household exclusions were void when applied to the "minimum coverage" required by the Kansas statute, but were valid when applied to amounts exceeding the minimum requirement. In other words, as long as an exclusion did not "dilute, condition or limit statutorily mandated coverage," then it could be applied. *Id.* at 482. After *Dewitt*, the Kansas legislature added language to KAIRA explicitly permitting the use of household exclusions. *See Hilyard*, 729 P.2d at 1198. In 1984, the legislature deleted that language from the statute. *Id.* It is Moser's position that the deletion of this language shows that the legislature intended to prohibit the application of household exclusions in Kansas in their entirety.

We find this argument unpersuasive. We cannot assume that the legislature's deletion of the provision permitting household exclusions is evidence that the legislature intended to repeal the use of household exclusions *in toto*. In fact, since 1984, state and federal courts in Kansas have consistently treated *DeWitt* as good law and permitted household exclusions to bar recovery in excess of KAIRA's mandatory minimum amounts. *See Great West Casualty Co. v. Canal Insurance Co.*, 901 F.2d 1525 (10th Cir. 1990) (holding that *DeWitt* voided insurance exclusions only up to the dollar amount dictated by KAIRA's statutory minimum insurance requirements); *State Farm Mut. Auto. Ins. Co. v. Ortega*, No. 90-1128, 1991 WL 12886, *1 (D. Kan. Jan. 17, 1991) (noting that

this court, in *Great West Casualty Co.*, *supra*, rejected the contention that under KAIRA, insurance exclusions are invalid in their entirety); *Ball By and Through Ball v. Midwestern Ins. Co.*, 829 P.2d 897, 903 (Kan. 1992) (explaining that in *DeWitt*, only "[h]ousehold exclusions in contravention of statutorily mandated liability insurance were found void because they violated public policy");[2] *Universal Underwriters Ins. Co. v. Hill*, 955 P.2d 1333, 1339 (Kan. Ct. App. 1998) ("Under *DeWitt*, an invalid provision limiting liability is not completely abrogated by the KAIRA. Rather, the provision is only voided to the point necessary to bring the policy in compliance with the minimum coverage required by the Act, that is, $25,000 per person per occurrence.").[3]

Moser argues that the foregoing body of uniform case law should be disregarded for the reason that, prior to this case, there has been no instance in which a contention that the legislature in 1984 silently overruled *DeWitt* has been presented to and addressed by any Kansas court (or, indeed, a federal court, such as, in the case at bar, the District Court for Colorado sitting in diversity in emulation of a Kansas trial court, or this court pinch-hitting for a Kansas appellate court). We see no ground for concluding that the Kansas

---

[2]    Justice Herd, of the Kansas Supreme Court, who wrote the opinion in *DeWitt*, *supra*, was also the author of *Ball By and Through Ball*, *supra*.

[3]    Moser for the first time in her appellate reply brief cites to a bulletin issued by the Kansas Insurance Commissioner in 1984 which explains the effect of the legislature's deletion of the provision permitting household exclusions as evidence that such exclusions were invalidated in their entirety. In our view, the fact that the Commissioner's 1984 innovative insight into the legislature's silent intention appears to have gone unremarked until this case's briefing on appeal is substantial evidence that the Commissioner was barking up the wrong interpretative tree.

Legislature's 1984 repealer–a legislative action apparently unaccompanied by any useful legislative history–constitutes compelling evidence that all the courts guided by *DeWitt* have, for the past twenty years, been following an errant path.

In light of the overwhelming case law showing that household exclusions continue to be valid in Kansas, we hold that the district court properly concluded that Moser's recovery under the Allstate automobile insurance contract is limited to $25,000, the minimum amount required by KAIRA.

III. Conclusion[4]

For the foregoing reasons, we affirm.

---

[4]  With regards to the umbrella policy, Moser argues as follows:

> The subject automobile policy provides $100,000 in bodily injury coverage to Rudolph Moser regarding his sister's injuries, damages, and losses. As such, no arguable "gap" exists between the automobile policy's coverage and the umbrella policy's coverage for automobile related bodily injury. Therefore, the district court's conclusion that the umbrella policy does not or cannot provide any coverage is in error.

We have, however, determined that KAIRA requires automobile insurance coverage for bodily injury only up to $25,000, and that above $25,000 the Allstate automobile policy's household exclusion provision is enforceable and forecloses further recovery under the policy by Moser. Thus, there is a "gap" between the automobile policy's $25,000 maximum and the umbrella policy's $100,000 minimum; the excess coverage contemplated by the umbrella policy does not come into play under these circumstances.